# Cates, etc. v. Cates, etc.

(Decided February 5, 1913.)

## Appeal from Hopkins Circuit Court.

1.  Deeds—Delivery of—Intention the Rule.—The question of the delivery of a deed is generally one of intention of the parties, and it is essential to a valid delivery that there should be some act or declaration from which an intention to deliver may be inferred. Neither express words, formal delivery, nor a manual delivery of the instrument to the grantee is required, it being sufficient, if it is apparent either from the words or acts of the grantor, that it was his intention to treat the deed as his, and to make a delivery of the same.

2.  Deeds—Recording *Prima Facie* Evidence of Delivery and Acceptance.—The recording of a deed is *prima facie* evidence of delivery to, and acceptance by, the grantee, and may, when coupled with other circumstances showing the intention to deliver the instrument to him, operate as an absolute delivery.

3.   Deeds—Recording Without Knowledge of Grantee Not Operative
     as a Delivery.—The fact that a person has executed and recorded
     a deed, where it is done without the knowledge or assent of the
     grantee, will not, of itself, operate as a delivery to the latter;
     nor will the mere delivery of such an instrument, for the purpose
     of having it recorded, if done without the knowledge of the
     grantee, constitute a delivery to him.

4.   Deeds—Acceptance of.—The acceptance of a deed need not be by
     formal or express words to that effect, but may be by acts, con-
     duct, or words of the parties showing an intention to accept.

5.   Deeds—When Delivery Implies Acceptance.—The delivery of a
     deed implies its acceptance by the grantee, in the absence of
     fraud, artifice, or imposition.

6.   Deeds—Presumption of Acceptance.—Where the grantor has exe-
     cuted a deed, by signing it, completely acknowledging it, and
     causing it to be lodged for record, and recorded in the proper
     office, a *prima facie* case of delivery is made, but such acts raise
     no presumption of an acceptance by the grantee, unless a clearly
     beneficial interest is conferred.

GIBSON & KINCHELOE and C. J. WADDILL, for appellants.

GORDON & GORDON & COX, for appellees.

OPINION OF THE COURT BY JUDGE MILLER.—Affirming.

Prior to 1879 Abner Cates owned a farm of about 226 acres, in Hopkins County. He sold portions of this land, from time to time, leaving him the owner of 101 acres in 1879. In March of that year, Cates, being indebted to Willis W. Harris in about $500.00, conveyed the 101 acres to Harris by a deed, which was absolute in its terms, for the recited consideration of $500.00 cash in hand paid. Harris was the uncle of Cates' wife, *nee* Julia Ann Crow. Julia Ann died in 1882, leaving one child, the appellee, Etha Cates.

In 1884, Abner Cates married Bettie Scott, his sec-ond wife, who bore him two children, the appellants, Lilly Cates and Chrystal Cates. There was an agree-ment between Harris and Abner Cates, that if Cates would redeem the property by paying the recited consid-eration, which represented the debt for which the farm had been conveyed to Harris by Cates, Harris should re-convey the farm to Cates for life, with remainder to his daughter Etha. The land was worth probably $1,200.00; and, in course of time, Cates repaid to Harris all he owed him. Cates wanted the farm conveyed directly to him-self, but Harris declined to do so, saying he had prom-ised Julia Ann Cates, his niece, whose patrimony had been used by Abner Cates in buying this land, and in

other ways, that he would protect her and her child in the way above indicated. Accordingly, on January 21, 1890, Cates and Harris went to the office of Clifton J. Pratt, an attorney, and gave him a memorandum from which to write a deed of reconveyance. Pratt drew the deed, which conveyed the farm to Abner Cates for life, with remainder in fee to Etha Cates, for the recited consideration of the love and affection that Harris bore towards the parties of the second part, "especially towards Etha Cates, his niece," and for the further consideration of $5.00, and other valuable consideration paid. Pratt testifies that they came to his office and stated to him how they wanted the deed written; that he wrote it to conform to their wishes, and handed it to Cates. So far as this record shows, the deed was not again heard of for sixteen years. Abner Cates died in September, 1911, leaving his wife, Bettie Cates, and his two children by his second marriage, Lilly and Chrystal, in possession of the farm. On December 30, 1911, Etha Cates brought this action against Bettie Cates and her children, to recover the farm, claiming it under the deed which Harris had made to her father on January 21, 1890. That deed had not been recorded at the time it was drawn; but, in 1906—sixteen years later—it was found in the office of the county court clerk by Etha Cates' husband, unrecorded, and bearing this endorsement:

"Acknowledged before me this 21st day of January, 1890, by W. W. Harris, _____ to be their act and deed, in due form of law.

"Attest: JNO. T. ADAMS, *Clerk.*"

Adams was the county court clerk in 1890.

Upon discovering the deed, Etha Cates' husband paid the tax and the recording fee, and had it recorded on January 27, 1906.

In the meantime, on March 4, 1904, Abner Cates had conveyed 50 acres of land, which included 16 acres of the 101 acres now in controversy, to Kirkwood, for $1,200.00. Kirkwood was made a defendant herein, and called upon to defend his title to the 16 acres. The defense is, that the original deed from Abner Cates to Harris in 1879 was a mere mortgage to secure the debt of $500.00 and upon the payment of that debt the fee remained in Abner Cates unincumbered; that the deed of January 21, 1890, was never delivered by Harris; was never accepted by Abner Cates, and that it was, there-

fore, ineffective to carry any title to Etha Cates. Kirkwood presents the additional defenses that he is a *bona fide* purchaser for value, without notice of the deed of 1890; and further, that in 1898 Abner Cates had mortgaged to Kirkwood 150 acres of land to secure $847.46, which represented, in part, the consideration for the conveyance to Kirkwood, and that if his title to the sixteen acres should be held inferior to Etha Cates' title thereto, he asked that his mortgage lien should be restored.

The circuit judge upheld the deed of January 21, 1890, as against the widow, Bettie Cates, and her children, and gave judgment against them in favor of the plaintiff, Etha Cates, but denied her any relief against the defendant Kirkwood. From that judgment Bettie Cates and her children prosecute this appeal, and Etha Cates prosecutes an appeal against Kirkwood.

The evidence shows that Harris never claimed or exercised any right of ownership over the farm, but that Abner Cates had, at all times, owned it and treated it as his own; and that he built thereon a house, a barn, a stable, and a tenant house after he had paid off his debt to Harris. There is no direct evidence that Abner Cates ever knew that the deed of January 21, 1890, had been acknowledged by Harris, or lodged for record by him or by any one. When L. R. Cates, the husband of Etha Cates, discovered the unrecorded deed in January, 1906, he first informed his wife of his discovery, and after conferring with her, they consulted a lawyer as to what his rights and duties were, under the circumstances. The lawyer advised him that he had a right to have the deed recorded, and that it was his duty to his wife to have it recorded. He acted upon that advice; but both he and his wife say they did not want their father, Abner Cates, to know of the recording, and were careful not to tell him anything about it. The only evidence that Abner Cates had any knowledge or suspicion of the recording of the deed, or that he ever said anything upon that subject, is found in the deposition of Cansler, a neighbor, who knew both Harris and Abner Cates. Harris had died in 1903, and Cansler had visited him several times during his last illness; and, when asked if Harris had made any declaration or statement with respect to the deed of January 21, 1890, Cansler said:

"A. Well, I went to see Uncle Willis—I always

called him Uncle Willis, though he was no kin to me—I was living with Ab Cates at the time. Uncle Willis asked me if Ab was coming to see him, and I told him I did not know; then he says: 'I reckon not; Ab got sorter mad with me when I made that deed back to that land.' And then he related the case—he said he had promised Ab's wife on her death bed that he would make the deed that way, and he said he was a man of his word and kept his word; and, if I understood him right, he said Mr. Cates, after his wife died, redeemed the land; and as he had agreed to sell it back to him if he could get the money, and had agreed to make the deed to her and her heirs, and he says, that is the way I made the deed. And he said Abner Cates did not like it and did not want to take the deed for awhile; he says that is the way I made the deed and I don't expect Ab will come to see me. That is exactly what he said; that was just a little while before he died; he was on his death bed then.

"Q. Mr. Cansler, after the information which you have related was given you respecting this deed, by W. W. Harris, did you communicate these facts to Abner Cates, the life tenant under that deed?

"A. I did. I asked Ab when I went back home, I says 'Ab, you ought to go and see Uncle Willis, he would like for you to come and see him.' And he says he did not know about it, whether he would go or not; then I asked him, I says, 'Ab, is this land her's—Etha's land— when you die?' He just stood there I reckon two or three minutes and the only answer he gave me was: 'People will know when I die.' I never asked him further about it.

"Q. You were then living with Abner Cates on his farm?

"A. Yes, I was living on his farm.

"Q. Did you ever talk with him about it afterwards?

"A. No sir, never did mention it again.

"Q. His remark to you was, when you imparted this information regarding Uncle Willis, after standing two or three minutes was, 'that people would know when he died?'

"A. Yes, sir, that is all he said."

The appeal against Kirkwood is of easy determination. Under Section 520 of the Kentucky Statutes, the deed of January 21, 1890, was not legally lodged for record until the State tax had been paid thereon; and

L. R. Cates testifies that he paid the State tax, and the recording fee, when he had the deed recorded on January 27, 1906. It was not, therefore, notice to Kirkwood when he bought in 1904. Phillips v. Clark, 4 Met. 348. Furthermore, the evidence not only satisfactorily establishes the fact that Kirkwood is a *bona fide* purchaser for value, and without notice of the deed of 1890, but that Etha Cates and L. R. Cates, her husband, both knew that Kirkwood was negotiating for the land, and encouraged him to buy it; and that Kirkwood's purchase money was used to pay off the debt upon the farm. There can be no doubt, therefore, that the judgment of the chancellor was right, in so far as it applied to Kirkwood's 16 acres.

There is more difficulty, however, upon the other branch of the case. It appears that Julia Ann Crow, who was the first wife of Abner Cates and the mother of Etha Cates, received from her uncle, W. W. Harris, who was her guardian, about $1,500.00 or more upon her marriage to Abner Cates, and that Abner used this patrimony in buying the farm in controversy, and in other ways.

Furthermore, there can be no doubt of the fact that Harris not only refused to convey the farm back directly to Abner Cates, or to a third person at Abner Cates' direction, but that he conveyed it to Cates for life, with remainder to Etha Cates, in fulfillment of a promise he had given to Julia Ann, his niece, before her death. The case, therefore, turns solely and entirely upon the single point as to whether the deed of January 21, 1890, became effective. If it did, the judgment must be affirmed upon the appeal of Bettie Cates and her children; otherwise, it must be reversed.

The effectiveness of the deed depends upon its delivery and acceptance; both are necessary. In Alexander v. deKermel, 81 Ky., 354, the deed had rested in the county court clerk's office for 16 years, without having been recorded, but bearing an entry in the alphabetical list of unrecorded deeds, giving the grantor, grantee, date, a brief description of the property, and this endorsement: "Not fully proven." Alexander, the grantee, had taken no part in the preparation or handling of the deed, or in selecting its depository; and, the record showed that about one month before his death he had no recollection of the deed. In concluding that the deed had been neither delivered to Alexander, the grantee, nor

accepted by him, or any one for him with authority, to do so, the court said:

"The law is clear on this point, that there must be a delivery, and an actual acceptance or assent, before the deed becomes binding between the parties, or valid as a deed. The mere execution of the deed by Thomas Bullitt Alexander and the delivery of it to the county clerk is no delivery usless Col. Alexander so directed it or afterwards assented to it. (Maynard v. Maynard, 10th Mass., 456; Sampson v. Thornton, 3 Met., 275; Cooper v. Jackson, 4 Wis., 537.) There is no proof that he did either. * * * The acknowledgement is a fact which may be proven to show delivery, but, standing alone, it does not establish a presumption of delivery, and, for many good reasons, it ought not to do so. It only requires the act of the grantor to make the acknowledgment, and it would be a dangerous policy to allow such weight to an act of his own as to make it *prima facie* evidence of the important fact of delivery, which requires the concurrence of the grantee."

See, also, the able opinion of acting Vice Chancellor Pirtle in the same case in 4 Ky., L. R., 142.

In Bunnell v. Bunnell, 111 Ky., 575, the general rule as to what would amount to a delivery was laid down as follows:

"So far we have considered this question as if an actual manual delivery of the deeds was necessary. But such is not the law. No particular form of procedure is required to effect a delivery. It is not essential that the paper be actually transferred. If the grantor, when executing it, intends it as a delivery, and this is knows to and understood by the grantee, and they treat the state as having actually passed thereby, it will have that effect, though the instrument be left in the possession of the bargainer. Wash. Real Prop. 261; Cecil v. Beaver, 28 Iowa, 241, 4 Am. Rep., 174; Tobin v. Bass, 85 Mo., 654, 55 Am. Rep., 392; Ward v. Small, 90 Ky., 198 (12 R., 58), 13 S. W., 1070; Gould v. Day, 94 U. S., 405, 24 L. Ed., 232. Delivery may be shown by acts without words, or words without acts, or by both combined. Hughes v. Easton, 4 J. J. Marsh., 573, 20 Am. Dec., 230; Shoptaw v. Ridgeway (22 R., 1495), 60 S. W., 723; Martin v. Bates (20 R., 1798), 50 S. W., 38; Ward v. Small, *supra*."

The language above quoted was quoted and approved

in O'Neal v. Sovereign Woodmen of the World, 130 Ky., 75.

And in Mullins v. Mullins, 120 Ky., 643, the fact that the father, in his petition, alleged that he had a deed made and recorded in the proper office, was held to be sufficient evidence of his intention to part with and pass the title to the land to his children, and that it did not require the actual manual delivery of the deed to them to make it a legal conveyance. It must be borne in mind, however, that in the case of infant grantees, an acceptance of the conveyance in their behalf will be implied if it be beneficial to them, thus bringing the Mullins case within the exception to the general rule. Pittman v. Flowers, 131 Ky., 804, is to the same effect.

In Owings v. Tucker, 90 Ky., 298, David L. Jones, in 1853, conveyed jointly to his children, as a gift, his home tract of land containing 475 acres, reserving the right of maintenance out of the land. H. L. Jones, an infant son of the donor, was one of the donees. In 1859, David L. Jones divided this land between his children, making each of them a deed to his part, conveying the part designed for H. L. Jones to him for life, with remainder to his children. Thereafter, Tucker bought the life interest of H. L. Jones in this land at a sheriff's sale under which he received a deed and took possession of the land. He subsequently discovered the deed of 1853, under which H. L. Jones took an undivided fifth interest in the tract of land. In considering the effect of the deed of 1853, the court said:

"Did H. L. Jones acquire title under the deed of 1853? Certainly not. The case of Davenport v. Prewitt, &c., 9 B. M., 98, upon which the appellant relies, says that, in order to make a valid conveyance, there must be both a grantor and grantee, and if the grant is beneficial to the grantee, it may be presumed that he has accepted it; and if, from the nature of the grant, this presumption does not arise, an acceptance of the grant must be otherwise shown, else there is no grant. And if a grant is made to an adult without his knowledge or consent, it is no grant, because he can not be made a grantee without his knowledge and consent, and when the knowledge is brought home to him he may reject the grant. Also, equity will imply an acceptance of a grant made to an infant, if beneficial to him, but he may reject the grant

upon his arrival at age, if he has not done some act which will estop him.''

And the doctrine that the signing, acknowledging and recording of the deed by the grantor creates a presumption of its delivery as of the date of the deed, ''subject to be rebutted by competent proof of either a non-delivery in fact, or of a delivery at another time than the date of the instrument,'' but that such facts raise no presumption of the acceptance by the grantee, save where a clearly beneficial interest is conferred, was approved in Cyrus v. Holbrook, 32 Ky. L. R., 468, 106 S. W., 300.

In Koger v. Koger, 29 Ky. L. R., 235, 92 S. W., 961, where a deed was delivered by the grantor to a third person to be kept for the grantor, without any directions to the bailee to deliver the same to the grantee, it was held that the grantor had not divested himself of dominion or control over the deed, and that a delivery thereof by the bailee to the grantee, without the knowledge or consent of the grantor, was not a delivery of the deed, in contemplation of law.

In 13 Cyc. 561, et seq, the rule as to what constitutes the delivery of a deed is stated as follows:

''The question of the delivery of a deed is generally one of intention of the parties, and it is essential to a valid delivery that there should be some act or declaration from which an intention to deliver may be inferred. A formal delivery, however, is not essential; nor are express words necessary. Nor is a manual delivery of the instrument to the grantee required, it being sufficient if it is apparent either from the words or acts of the grantor that it was his intention to treat the deed as his and to make a delivery of the same. * * *

''The recording of a deed is *prima facie* evidence of a delivery to, and acceptance by, the grantee, and may, when coupled with other circumstances showing an intention to deliver the instrument to him, operate as an absolute delivery. And the delivery of a deed for record may likewise so operate where such an intention is shown.

''The fact that a person has executed and recorded a deed, where it is done without the knowledge or assent of the grantee, will not of itself operate as a delivery to the latter. Nor will the mere delivery of such an instrument for the purpose of having it recorded, if done with-

out the knowledge of the grantee, constitute a delivery to him.''

And, in the same volume, on page 570, the rule as to the necessity and requisites of an acceptance is thus stated:

"It is essential to the validity of a deed that there should be an acceptance of the instrument by the grantee. But delivery of a deed implies its acceptance by the grantee, in the absence of fraud, artifice or imposition.

"A delivery of a deed to a third person for the grantee's use will operate as a good delivery to the grantee where it is assented to or ratified by him.

"The recording of a deed will not of itself constitute a delivery to the grantee in the absence of an acceptance by him of the instrument; but if subsequently accepted the deed will be valid. The same rule applies to the delivery of a deed for record.

"An acceptance of a deed need not be by formal or express words to that effect, but may be by acts, conduct, or words of the parties showing an intention to accept. So there may be an acceptance by the retention of the deed by the grantee; by an assertion of title by him; by his conveyance of the property; by acts of ownership generally in respect to the property; or by bringing a suit on the deed. And, although a deed does not actually pass from the grantor to grantee, yet if there are words showing delivery and acceptance this may be sufficient. But an acceptance after the death of the grantor is ineffectual to pass title.''

In Loring v. Hildreth, 170 Mass., 328, 40 L. R. A., 127, it was held that the mere recording of a deed by the grantor did not amount to a delivery of it.

In Morrison v. Fletcher, 119 Ky., 494, the court reviewed the cases upon the subject of delivery and acceptance of deeds, and adhered to the doctrine announced in Bunnell v. Bunnell, and other cases, that when the grantor has executed a deed by signing it, completely acknowledging it, and causing it to be lodged for record, and recorded in the proper office for registry, a *prima facie* case of delivery is made, but that such facts raise no presumption of an acceptance by the grantee, save where a clearly beneficial interest is conferred.

Applying this rule to the facts of the case in hand, we find sufficient facts to justify the conclusion that the deed of January 21, 1890, was both delivered by the

grantor, and accepted by the grantees. Harris and Abner Cates, the grantor and one of the grantees, went together to Pratt, and gave him the necessary data by which to draw the deed; and Pratt drew the deed as directed, and delivered it to Cates. There is no evidence whatever that Cates ever refused to receive it; and when we add the further fact, that we find it properly acknowledged by Harris and lodged for record in the proper office, and subsequently put to record by Etha Cates, one of the grantees therein, there was certainly an acceptance upon her part.

The testimony of Cansler, above quoted, shows that Abner Cates knew of the execution of the deed which he, at one time, had in his possession; otherwise, in all probability, he would have denied the existence of the deed, or claimed the property as his own. Knowing, however, that the deed had originally been made, he preferred to give an equivocal answer, probably for the purpose of keeping peace in the family.

Being of opinion that the circuit judge properly ruled, his judgment is affirmed upon the appeal and upon the cross-appeal.