## Ward, et al., v. Rittenhouse Coal Co.

(Decided February 13, 1913.)

### Appeal from Johnson Circuit Court.

1. Deeds—Delivery and Acceptance of Necessary to Complete Contract.—It is essential to the validity of a deed as an executed contract that it should be delivered by the grantor and also accepted by the grantee, when the grantee is competent to contract for himself and determine for himself whether or not he desires to accept the deed.

2. Deeds—Evidence of Acceptance.—Whether the grantee will be deemed to have accepted a deed or not is a qustion to be determined from his acts and intentions. The acts of the grantee, and his intentions as expressed in these acts, are both to be looked to for the purpose of ascertaining what he did.

W. H. HOLT and J. F. BAILEY, for appellants.

VAUGHN & HOWES and C. B. WHEELER, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL.—Affirming.

In 1904 John C. Ward sold to J. S. Rittenhouse a tract of land and executed to him a bond for title. Soon after the sale Rittenhouse took possession of the land and erected some improvements on it. After this he sold part of the land covered by the title bond to the Rittenhouse Coal Co., and in 1907 John C. Ward and wife executed to the Rittenhouse Coal Co. a deed for the land it had purchased from J. S. Rittenhouse. Soon after this the Rittenhouse Coal Co. commenced operations on or near the land, and after erecting valuable improvements and buildings, leased the land with the mineral privileges to the Tibbals Coal Co., which company was in possession in 1910, engaged in the business of mining coal from the land. In 1910 the Tibbals Coal Co. and the Rittenhouse Coal Co. brought this suit in equity against the appellant, Lucinda Ward, and her husband, Jeff Ward, seeking to enjoin them from trespassing on the land and asserting claim of title thereto.

For answer to this suit Lucinda Ward claimed that she was the owner of the land in the possession of the coal company, and on which the alleged trespass committed by her had taken place. She asserted title to it by reason of the fact, as she alleged, that John C. Ward, previous to his sale of the land to Rittenhouse, had sold and conveyed it to her, in consideration of $500 paid in cash. She also averred that after executing and delivering to her the deed, and before it was recorded, John C. Ward wrongfully and fraudulently obtained possession of and destroyed it. Her prayer for relief was that the petition be dismissed, that John C. Ward be required to execute and deliver to her a deed to the land, and that her title to it be quieted.

To this pleading the coal company replied, denying that John C. Ward had sold to Lucinda the land, or executed, or delivered to her a deed for it. It further averred that the Wards, although they lived close to the land and knew that valuable improvements were being made thereon, did not assert any claim to the land, or give to the coal company any notice or information that they had, or claimed to have, any title or interest in it. It further averred that neither Rittenhouse, nor the Rittenhouse Coal Co., nor the Tibbals Coal Co., nor either of them, had any information or knowledge of

any character concerning any deed of conveyance or other instrument of writing executed by John C. Ward to Lucinda Ward.

It appears from an order of court that the affirmative matter in this reply was controverted of record. It will thus be seen that the issues made by the pleadings were: (1) Whether or not John C. Ward, previous to the sale of the land to Rittenhouse, had sold it to Lucinda Ward, and executed and delivered to her a deed therefor; (2) Whether or not Rittenhouse, and through him the coal company, had actual notice of the execution and delivery of this deed, if a deed was in fact executed or delivered, before and at the time Rittenhouse purchased the land from John C. Ward; (3) whether or not Lucinda Ward was estopped by her conduct from asserting title to the land.

Upon the issues thus made evidence was taken by the parties, and, upon hearing the case, the court adjudged that Lucinda and Jeff Ward had no right, title, or interest in the land, and enjoined them from trespassing on the land or interfering with the coal compasy in its possession and control of it.

On this appeal it is insisted, in behalf of Lucinda and Jeff Ward, that the judgment should have gone in their favor, upon the ground that John C. Ward sold the land to Lucinda Ward and executed and delivered to her a deed therefor; and upon the further ground that, although this deed was never put to record, because it was wrongfully and fraudulently taken possession of and destroyed by John C. Ward after its delivery, J. S. Rittenhouse, to whom John C. Ward afterward sold the land, purchased with full notice of the fact that a deed had been made by John C. Ward to Lucinda Ward, and it is argued that the Rittenhouse Coal Co., of which J. S. Rittenhouse was president, is chargeable with the knowledge concerning the deed that was in the possession of J. S. Rittenhouse. It is further insisted as a right arising out of these alleged facts that Lucinda Ward should be substituted in place of and to the rights of Rittenhouse and the Rittenhouse Coal Co. in their contract with the Tibbals Coal Co., and that the rents agreed to be paid by the Tibbals Coal Co. to Rittenhouse and the Rittenhouse Coal Co. should be paid to Lucinda Ward.

The evidence relating to the sale and conveyance by

John C. Ward to Lucinda shows without contradiction that, in 1903, John C. Ward did sell, in consideration of $500 paid in cash, the land in controversy to her, and execute to her a deed therefor, thus reducing the issue upon this point to the single question whether or not this deed was ever delivered to or accepted by Lucinda Ward. The evidence also shows without dispute that this deed was signed and acknowledged by John C. Ward before a notary public, in whose possession it was left for the purpose of securing the signature and acknowledgment of John C. Ward's wife, and that before the signature and acknowledgment of his wife was obtained to the deed, and while it was yet in the possession of the notary public, John C. Ward obtained possession of it and destroyed it.

Although it is not made an issue by the pleadings, it may here be noted, that John C. Ward testifies that, after he obtained possession of the deed, as before stated, he returned to Lucinda Ward, in a settlement of other business matters between them, the $500 she paid him for the land. The evidence relating to the circumstances under which the deed was executed by John C. Ward and left with the notary to obtain the signature and acknowledgment of his wife, and the withdrawal by him of the deed from the notary. is in substance as follows:

John C. Ward testifies that, after signing and acknowledging the deed, he left it with the notary, with instructions to the notary to get the signature and acknowledgment of his wife, but that he did not authorize the notary to deliver the deed to Jeff Ward, who in the transaction was acting as the agent of his wife, Lucinda. He further says that he did not at any time deliver the deed to Jeff Ward or authorize its delivery to him, and was induced to take possession of the deed in order that he might protect himself in another business transaction had between himself and Jeff Ward, acting as agent of his wife, and that, after obtaining possession of the deed, he accounted for the $500 paid to him in a final settlement of this business matter that induced him to take possession of the deed.

Jeff Ward testifies in substance that, when the deed was acknowledged by John C. Ward before the notary, it was delivered to him by the notary, by the direction of John C. Ward, and that, after it was delivered to him,

he left it with the notary with directions to the notary to get the signature and acknowledgment of John C. Ward's wife. He testifies that about a week after this the notary, in whose possession the deed had been left, handed it to him, and upon discovering that John C. Ward's wife had not signed or acknowledged it, he returned it to the notary to get her signature and acknowledgment, but, in place of doing this, the notary delivered the deed to John C. Ward, who destroyed it, and that he did not at any time direct or request the notary to surrender the deed to John C. Ward, or do anything in connection with it except to get the signature and acknowledgment of John C. Ward's wife.

The notary public testifies in substance that, after he took his acknowledgment, John C. Ward told him to give the deed to Jeff Ward, that he had all out of it that he wanted, and thereupon he handed the deed to Jeff, who retained it for a few minutes and returned it to him to get the signature and acknowledgment of John C. Ward's wife. That several days afterward Jeff Ward again came to him and called for the deed, and upon discovering that it had not been signed and acknowledged by John C.'s wife, again handed it to him with the request that he get her signature and acknowledgment. He further testifies that before he did this John C. Ward demanded possession of the deed, and he surrendered it to him. He also said that there was no express direction given by John C. Ward to deliver the deed to Jeff, and that he handed Jeff the deed so that he might examine it and see whether it was satisfactory or not, not intending what he did to be a delivery of the deed to Jeff Ward at that time and that Jeff Ward would not accept the deed because it had not been signed or acknowledged by John C.'s wife.

We think it very clear from this evidence that Jeff Ward was not willing to and would not accept the deed without the signature and acknowledgment of John C. Ward's wife. But whether the deed was left with the notary by John C. Ward to obtain the signature of his wife, or left with the notary by Jeff Ward for this purpose, is left in doubt by the evidence. It is not, however, so material whether it was left with the notary for this purpose by John C. Ward or by Jeff Ward, because it is quite clear that Jeff would not accept the deed without the signature and acknowledgment of John C.'s

wife. John C. Ward may have been entirely willing to deliver the deed to Jeff, and may have left the deed with the notary for that purpose, but the acceptance of the deed by Jeff Ward was just as essential to its validity as an executed contract between the parties as the delivery of it. Cates v. Cates, 152 Ky., 47; Commonwealth v. Jackson, 10 Bush, 424; Bell v. Farmers Bank, 11 Bush, 34; Morrison v. Fletcher, 119 Ky., 488; Owings v. Tucker, 90 Ky., 297; Alexander v. Dekermel, 81 Ky., 345.

The doctrine of implied acceptance, that may be invoked to effectuate the validity of a deed as a conveyance of land when infant grantees are concerned, has no place in this case. The parties to this transaction were competent to contract for themselves, and the policy of the law is to let such parties make their own contracts, and the acceptance of a deed under circumstances like those we are considering will not be implied for the benefit of a grantee, who is present in person, contracting for himself, and exercising the right to reject or accept as he chooses.

Whether the grantee will be deemed to have accepted a deed or not is a question to be determined from his acts and his intentions. The acts of the grantee and his intentions, as expressed in these acts, are both to be looked to for the purpose of ascertaining what he did Adopting this rule as a standard by which to decide whether or not Jeff Ward accepted the deed, we think it clear from the evidence that he did not, and we are strongly confirmed in this position by the subsequent conduct of the parties. The deed under which Lucinda Ward asserts title to the land was made in 1903, but not until 1909 or 1910 did she ever set up any claim to the land or undertake in any way to interfere with the possession of it by any of the vendees of John Ward. During all these years she and her husband lived within a few miles of the property. They knew who was in possession of it, what was being done with it, and the improvements that were being made on it, and it would seem that, if the deed had been accepted earlier action would have been taken to assert title to the land.

The fact that John Ward delivered the deed to the notary, as it is shown by the evidence he did, does not help the case for Lucinda Ward. His delivery without her acceptance did not invest her with title. If it should be concluded that John Ward had no right to repossess

himself of the deed, and that in doing so he acted both wrongfully and fraudulently this falls far short of giving her a cause of action against his vendees. Her present cause of action against them is based entirely on the fact that she had acquired title to the land in the manner stated, but as she could not acquire title without accepting the deed, and the evidence shows she did not accept it, her case must fail. Nor does the fact that John Ward took possession of the deed make the case for Lucinda any stronger than it would have been if a stranger or some third party had wrongfully taken possession of and destroyed it. Looked at from any standpoint the insurmountable obstacle in the way of her recovery consists in the fact that she failed to show an acceptance of the deed, which was the only method by, which she could have acquired title to enable her to successfully maintain this action.

In view of what has been said, it is not necessary to notice the other issues presented by the pleadings and the evidence.

The judgment is affirmed.