## Cornett v. Maddin et al.

Feb. 24, 1939.

John W. Caudill, Judge.

D. G. BOLEYN for appellant.

AFTON M. SMITH and H. H. SMITH for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—
Affirming.

Albert Maddin married a sister of Henderson Cornett and of Leander Cornett, and Albert lived in Knott County, Kentucky; Henderson lived at Coatesville, Penn.; and Leander, who was unmarried, lived in Washington, D. C. Leander owned a small tract of land in Knott County, containing 26.6 acres which had been set aside to him as his interest in the estate of his deceased father. On April 2, 1934, he wrote his brother-in-law, Albert, offering to sell him this land for $150, of which $50 was to be paid in cash, the balance to be evidenced by a note which the letter said Albert could pay as it suited him. This proposition was accepted by Albert, who had a deed drawn from Leander to himself showing the consideration to be $50 cash and the remaining $100 payable in six and twelve months after the date of the deed. The $50 cash was deposited in the Bank of Hindman and the deed was forwarded to Leander in Washington with instructions to him to execute same and return it to the bank which would forward him the $50. Leander executed the deed, forwarded it to the bank,

which sent him the $50 and which delivered the deed to Albert.

Albert accepted the deed but did not have it recorded immediately. He took possession of the land, cultivated it, and executed 'an oil and gas lease thereon to the Inland Oil Company. Some six months or more after receiving the deed, Albert took it to the Knott County Court Clerk's office for recordation and R. C. Kilgore, a deputy clerk in that office, discovered that the notary in taking the acknowledgment had signed his name in the wrong place in filling in the certificate. Upon the advice of Kilgore, the deed was returned to Leander by Albert with the request that he have the notary correct his certificate. Leander did not answer this letter but after receiving several letters from Albert, he finally replied requesting a check for the balance of $100, saying when a check for that amount was received he would forward the deed to Albert. Thereupon, Albert placed $100 to Leander's credit in the Bank of Hindman with instructions to the bank to forward it to Leander when the deed was received, and Albert so wrote Leander. Not hearing from Leander for several months and thinking perhaps he had lost the deed to be returned to him, Albert then had the county court clerk prepare another deed which he forwarded to Leander by registered mail, requesting him to properly execute same before a notary and return it to him. Leander never returned either the original deed or the second one sent him, and later Albert heard through Leander's mother that he had sold the land to another brother, the defendant, Henderson Cornett.

The deed Leander executed to Henderson was dated July 6, 1935, and soon thereafter Henderson brought it to Knott County and lodged the same in the county court clerk's office for recordation. Henderson executed an oil and gas lease on this land to the United Carbon Company in the summer of 1935, and a small producing well was drilled thereon in the fall of that year. On Nov. 23, 1935, Albert filed this suit in equity against Leander, Henderson and the United Carbon Company, alleging he bought this land, accepted the deed therefor and only returned same to the grantor to have the acknowledgment corrected; that he was ready, willing and able to pay the balance of the purchase price; that Henderson at the time he obtained a deed to this land from Leander, knew Leander had previously sold same to

the plaintiff, Albert, and Henderson took no title through the conveyance executed to him by Leander. The plaintiff asked that the deed from Leander to Henderson be canceled, that the oil and gas lease Henderson executed to the United Carbon Company also be canceled and that the plaintiff be adjudged to be the owner of the land. Neither Leander nor the United Carbon Company answered, but the defendant, Henderson, filed an answer. The first paragraph traversed the petition, and in the second paragraph Henderson pleaded affirmatively that at the time he purchased this land he had no knowledge, notice or information plaintiff had bought same and that he was an innocent purchaser for value without notice and should be adjudged the owner of the land. No reply was filed, proof was taken, and the chancellor entered a judgment decreeing Albert was the owner of the land and ordered the deed executed to Henderson canceled and that the Master Commissioner of the Knott Circuit Court make a deed conveying this land to the plaintiff.

The defendant, Henderson, as appellant, prosecutes this appeal, assigning the following errors to reverse the judgment: First, plaintiff filed no reply to defendant's affirmative plea that he was an innocent purchaser for value without notice, therefore this plea stands confessed; second, the plaintiff refused to accept the deed tendered him by Leander, and he took no title thereunder; third, an unrecorded deed passes no title as against a bona fide purchaser for value without actual notice, hence defendant took title to this land through the deed executed to him by Leander. We will discuss these propositions in the order named.

Section 126 of the Civil Code of Practice provides every material allegation of a pleading must be taken as true unless expressly traversed, except in the four instances wherein this section makes it necessary to prove material allegations, which four exceptions have no application here. Section 127 of the Civil Code of Practice defines a material allegation as one which is necessary for the statement or support of a cause of action or defense. The defense that one is an innocent purchaser of land without notice must be pleaded. Brogan v. Porter, 145 Ky. 587, 140 S. W. 1007; Walker v. Carter et al., 208 Ky. 197, 270 S. W. 770; Board of Education v. Simmons, 245 Ky. 493, 53 S. W. (2d) 940. But there was no reason for the plaintiff to reply to this

affirmative plea by defendant that he was a bona fide purchaser for value without notice. The petition alleged that the defendant at the time he purchased this land knew his grantor had previously conveyed it to plaintiff and that defendant and his grantor entered into a scheme to defraud plaintiff; hence defendant's affirmative plea joined the issue with the plaintiff as it stated exactly the converse of plaintiff's allegation. Even if this were not correct, the defendant could not sustain his contention that his affirmative plea should be replied to because he treated the issue as joined, took proof thereon and let the cause be submitted for judgment on its merits. We have written many times a judgment will not be reversed for failure to file reply controverting affirmative matter in a pleading that has been filed when the issues are treated as joined, proof taken and the cause submitted for final judgment. Colovas v. Allen Motor Company, 242 Ky. 93, 45 S. W. (2d) 809 and authorities cited therein.

The record shows the plaintiff accepted this deed and his only purpose in returning it to the grantor was to have the correction made in the certificate of acknowledgment. Every act of plaintiff so shows. He cultivated the land, leased it to the Inland Oil Company, and after holding his deed for six months he lodged it in the county court clerk's office. The deputy clerk, Kilgore, advised him to have this error corrected before putting his deed to record, and then plaintiff returned the deed to his grantor, Leander, requesting him to have this correction made. When Leander failed to return the deed, plaintiff wrote him again and enclosed a form of deed so there could be no error made in executing it, and he wrote the grantor he had deposited $100 to his credit in the bank and that this money would be delivered to him upon his returning the deed properly executed.

Appellant relies upon Ward v. Rittenhouse Coal Company, 152 Ky. 228, 153 S. W. 217, as establishing plaintiff's failure to accept this deed. There, the deed was left with the notary public who was to get the signature and acknowledgment of the grantor's wife and then deliver the deed to the grantee. The notary handed the deed to the grantee, who retained it for a few minutes, and upon discovering it was not signed or acknowledged by the grantor's wife, returned the deed to the notary to obtain same. Of course, the court held.

this was not an acceptance of the deed by the grantee. In the Ward case the court said the acts of the grantee and his intentions as expressed in his acts are both to be looked to for the purpose of determining whether or not he accepted the deed. In the case at bar the acts and intentions of the grantee, the plaintiff, show beyond doubt he accepted this deed.

An examination of the record in this case leaves no doubt in the mind but that the defendant, Henderson, at the time he accepted a deed from Leander, had full knowledge of the unrecorded deed Leander had executed to Albert. The testimony of Bentley Williams, Louisa Cornett, the mother of Henderson, and Hattie Mullins, a sister of Henderson, and Ward B. Allen, lease agent for the Inland Oil Company, shows Henderson knew Leander had conveyed this land to Albert. Louisa testified she told Henderson that Albert had bought this land, to which he replied, that Albert had not paid enough for it. Hattie testified that while she, Henderson and their mother, Louisa, were at the dining table eating in July or August, 1934, Henderson said that Albert had bought Leander's land too cheap and Henderson requested Hattie to sell him her land. Bentley Williams testified he heard Albert tell Henderson about buying this land and that he had paid $50 on the purchase price. Other parts of the record show this conversation occurred in the summer of 1934. Henderson does not deny this conversation with Albert but contents himself by saying he does not remember it, but denies Albert showed him a deed from Leander. In the spring of 1934, Allen, the lease agent for the Inland Oil Company, informed Henderson that Albert had purchased Leander's land and leased it to his company.

While Henderson was on the witness stand he stated the deed Leander made him was prepared by Henderson's attorney from a deed which Albert had forwarded Leander, and he was requested to file the deed with his deposition, which he agreed to do, marking it "exhibit No. 4." As a matter of fact, Henderson never filed this exhibit and plaintiff moved the court to require him to do so; which motion was sustained. Still defendant did not file this deed and the plaintiff obtained a rule requiring him to do so. However, the deed was never produced and it is not in the record. We presume the reason the rule was not complied with was because Henderson at that time was in Pennsyl-

486

vania and without the jurisdiction of the court. When a party to a suit deliberately fails to produce an exhibit testified about and to file same as a part of the record, a court will construe the effect of such exhibit most strongly against such party. Hence, we construe this missing exhibit as being written notice to defendant that this land he purchased from Leander had previously been deeded to Albert.

Although the deed from Leander to Albert may have been defectively acknowledged, yet it was good between the parties and passed title from Leander to Albert. As a general rule, an unacknowledged deed passes title between the parties and those claiming under them, although it is not a recordable instrument. Kerr v. Watkins et al., 234 Ky. 104, 27 S. W. (2d) 679, and authorities cited therein.

The chancellor was correct in adjudging the deed from Leander passed title to Albert; also, in adjudging that Henderson was not a bona fide purchaser without notice and that the deed Leander executed to him be canceled.

Perceiving no error in the judgment, it is affirmed.