## Schwartz Amusement Co., Inc., et al. v. Independent Order of Odd Fellows, Howard Lodge, No. 15, et al.

May 19, 1939.

564

TODD & BEARD and WOODWARD, DAWSON & HOBSON for appellants.

CHARLES W. MORRIS and GILBERT & DAVIS for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

In this opinion the appellants, Schwartz Amusement Company and J. I. Schwartz, the plaintiffs below, will be referred to as the plaintiffs, and the appellees, Independent Order of Odd Fellows, and Robert Enoch, defendants below, will be referred to as the Lodge and as Enoch.

J. I. Schwartz resides in Indianapolis, Indiana, and is engaged in the moving picture theater business personally and through the Schwartz Amusement Company, a corporation which he controls. He and his corporation held leases on two theaters in Shelbyville, Kentucky, one known as the Shelby and the other as the Strand, which theaters were under the supervision of a local manager, Robert Enoch, who resided in Shelbyville and was the agent of Schwartz. The Shelby was rented from Miss Ivory Ethington at a monthly rental of $350, payable in advance on the first day of each month. The Strand was rented from the Lodge at a monthly rental of $75, payable on the last day of each month. The written lease wherein plaintiff rented the Strand from the Lodge was dated July 1, 1936, and covers a period of five years from that date, with an option to the leasee to extend it for an additional term of five years from July 1, 1941. The lease contains this provision as to the payment of rent:

"For the said lease the second party agrees and promises to pay on the last day of July 1936, and on the last day of each following month during the entire existence of this lease, the sum of $75.00, which sum is to be paid to such party as designated by the first party, and upon a default or failure to pay said monthly payments as they fall due for a period of ten days thereafter, then the first party has the option to declare this lease canceled and take possession of the premises or to hold the second party liable therefor, and to re-rent the premises and any such rental obtained to be credited upon the amount due under this lease."

It was customary for Enoch to make out checks on a Shelbyville bank covering the rents of these two theaters at the end of each month, and to mail same to Schwartz at Indianapolis, who would sign the checks and have his secretary enter them on his books and return them to Enoch. About the first of each month Enoch would deliver the returned checks to the respective landlords. The record shows that Enoch made out a check payable to Miss Ethington for $350 in payment of her August rent and a check payable to the Lodge for $75 in payment of its July 1938, rent and forwarded them to Schwartz in Indianapolis the latter part of July. Schwartz testified he signed both checks and his secretary and bookkeeper, Hirchman, testified he entered the two checks and mailed them in one envelope to Enoch at Shelbyville on or about July 31, 1938. Enoch delivered Miss Ethington's check but did not deliver the $75 check to defendants, and he testified it was not received by him. However, he never called to the attention of Schwartz or of the Lodge that he had failed to receive the $75 check for the rent on the Strand

The first part of August, Schwartz negotiated with one Settos, who controls a theater managers' corporation, to take charge of his Shelbyville theaters and operate them for him. Schwartz had not been running the Strand and it had remained dark for several years. He testified it was not profitable to operate both theaters in a town the size of Shelbyville and that he rented the Strand for the purpose of keeping some competitor from obtaining a lease on it. It was rumored in Shelbyville that Schwartz was on some character of deal with Settos, and further rumored that another picture theater would open in the town. Enoch went to Indianapolis

to learn from Schwartz if he would hold his job, and Schwartz informed him that so long as his work was satisfactory he would be retained. On August 7, 1938, Enoch started working under the Settos management. Settos and his assistant, Rosenthal, came to Shelbyville to arrange for the taking over of the Shelby and the Strand Theaters, which latter they planned to keep dark just as Schwartz had. On August 10th, Rosenthal and Settos took Enoch to dinner with them in Shelbyville and talked over with him certain improvements they contemplated making in each of these theaters. Enoch knew he was retained by them as local manager and he was given a check for one week's salary, which he represented to Settos was $40, while in fact he had been receiving only $30 from Schwartz. At no time did Enoch inform Settos, or Rosenthal, that the rent on the Strand had not been paid, although he knew it was important to Settos, and also to Schwartz, to retain the lease on the Strand and that it was the purpose of Settos to do so.

Boyd Roe, who had no connection with the Odd Fellows Lodge, got in touch with some of its members and informed them a rumor was current in the town that a third theater was to be opened, and inquired if Schwartz had paid his rent for July. Judge Ralph Gilbert and other prominent members of the Odd Fellows had a meeting on August 12, 1938, which was the day after Roe had mentioned the subject, and they discovered the rent had not been paid. Roe advised these gentlemen he could rent their theater to Enoch for ten years at a monthly rental of $100 and advised them that if the third theater were opened in town, there would be no demand for their property. On August 13th, the Lodge entered into a written contract with Enoch wherein the Strand was leased to him for a period of ten years from August 13, 1938, at a monthly rental of $100. On the same day they made the lease with Enoch, to-wit, August 13, 1938, the Lodge wrote Schwartz they had cancelled his lease because of his failure to pay the July, 1938, rent within the time provided by the lease. Schwartz immediately came to Shelbyville and took the matter up with Enoch. Although he was in Shelbyville for several days, he did not pay the Lodge the July rent until August 17, 1938. When a representative of the Lodge accepted this rent, Schwartz was informed that the lease had been cancelled and that the rent he

was paying, and which the Lodge was accepting, was the July, 1938, rent.

On August 22d, the plaintiffs filed their petition in equity in the Shelby Circuit Court against the Lodge and Enoch for a declaratory judgment under Section 639a—1 et seq., Civil Code of Practice, seeking a declaration of their rights to this lease. The petition alleged that Enoch, while the agent of plaintiffs, entered into an unlawful and illegal conspiracy with the Lodge to procure a cancellation of plaintiff's lease so that the Strand might be leased to him; that in furtherance of this conspiracy, Enoch wilfully failed to deliver the check to the Lodge for the July rent, which check plaintiffs alleged they mailed Enoch in ample time for him to pay the July rent before the grace period expired; that the Lodge on August 13th, notified the plaintiffs the lease had been cancelled, and on that day the Lodge leased the Strand to Enoch. Plaintiffs asked the Court to adjudge the lease the Lodge had executed to them on July 1, 1936, to be in force and effect, and to enjoin the Lodge from leasing the property to Enoch.

The answer of Enoch was a traverse, following which there was an affirmative plea that he leased the property in good faith after the Lodge notified plaintiffs their lease had been cancelled. The Lodge filed an answer, counterclaim and cross petition, which first traversed the allegation of the petition that it conspired with Enoch to unlawfully cancel the lease, and pleaded affirmatively the lease with plaintiffs was cancelled for non-payment of rent; that the lease entered into with Enoch was made in good faith and without collusion on its part; that Enoch was plaintiffs' agent to deliver the rent check and the Lodge had no knowledge of any misconduct on the part of Enoch and it is in no way liable for his actions; that the lease contract which it cancelled was made by the plaintiffs to unlawfully restrain trade and to suppress competition, therefore, the same is against public policy and void. Enoch filed an amended answer adopting paragraph 4 of the Lodge's pleading wherein it alleged the lease contract between it and plaintiffs was in restraint of trade and void. The plaintiffs filed no replies but the record shows an agreed order controverting the affirmative matter in the answer of Enoch. While we find no such order controverting the affirmative matter in the answer, counterclaim and cross petition of the Lodge or the amended answer of

Enoch, the parties have treated the issues as joined, and have taken proof thereon, hence we will so consider them. Colovas v. Allen Motor Company, 242 Ky. 93, 45 S. W. (2d) 809; Cornett v. Maddin, 277 Ky. 480, 126 S. W. (2d) 871, decided March 24th. It will be noted plaintiffs nowhere in their pleadings ask that the court adjudge Enoch holds as trustee for them the lease they allege he fraudulently obtained from the Lodge. Nor is there any plea by plaintiffs that the Lodge lulled them to sleep by not enforcing the terms of the lease previous to the forfeiture upon their being in arrears with the rent on an occasion or two.

The chancellor upon a final submission of the case on its merits refused the injunction, dismissed the petition and adjudged Enoch was entitled to the possession of the property under the lease executed to him by the Lodge. The plaintiffs are here on appeal seeking a reversal of the judgment on two grounds: (1) The lease was unlawfully cancelled; (2) Enoch being plaintiffs' agent had no right to acquire the lease. The Lodge contends that as Enoch was the agent of Schwartz it cannot be held liable for any misconduct on his part in acquiring the lease as it did not collude with him in so doing. Both the Lodge and Enoch contend that the lease Schwartz held on the Strand was in unreasonable restraint of trade, therefore, it was against public policy and void, and plaintiffs cannot enforce the terms of that lease.

Forfeitures are not favored at law or in equity and courts are reluctant in enforcing them. In interpreting the forfeiture clause in a contract, courts will strictly construe it against the party who claims the right of forfeiture. 6 R. C. L. 906, Section 291; Hogg v. Forsythe, 198 Ky. 462, 248 S. W. 1008. But when the parties have made an express contract which will admit of but one interpretation, the court must give effect to it, since courts cannot make a new contract between the parties but must enforce the one the parties have made. 16 R. C. L. 1116, Section 634; Wender Blue Gem Coal Company v. Louisville Property Company, 137 Ky. 339, 125 S. W. 732.

Plaintiffs rely upon Edwards-Pickering Company v. Rodes, 203 Ky. 95, 261 S. W. 884, Hogg v. Forsythe, supra, and Paducah Home Oil Company v. Paxton, 222 Ky. 778, 2 S. W. (2d) 650, 56 A. L. R. 797, as sustaining

their position that equity will grant relief against a forfeiture. In the Rodes case the lease gave the landlord the right to forfeit the lease if the tenant failed to pay the rent for more than sixty days after it was due. The tenant mailed the check at the Post Office by 6 o'clock P. M. on the last day of grace for the payment of the rent, and it was at least possible, if not probable, that the check was put in the landlord's post office box before midnight, as it was found in his box the next morning at 7:30. The landlord was not in the slightest damaged or inconvenienced by reason of the fact that he had not received the check until 7:30 A. M. on January 31, instead of before midnight, January 30th, therefore, the court granted relief against the forfeiture.

In the Hogg case the lease provided the tenant would begin mining operations not later than March 15, and it allowed the landlord to declare a forfeiture in the event the tenant did not comply with the provisions of the lease. The tenant had spent large sums on the property and was making every effort to put the mine in operation but was delayed in getting his machinery, and was thirty days late in beginning mining operations. A few days before Hogg moved the machinery into the mine he heard the landlord was considering forfeiting his lease, therefore, he went to see the landlord and was assured by him that he was satisfied, and for Hogg to do the best he could in getting the mine started. Three or four days thereafter the landlord attempted to forfeit the lease on account of Hogg's delay in starting mining operations. The court refused a forfeiture on the ground the landlord had expressly waived his right of forfeiture by his conduct and his language.

In the Paxton case the lease contained a forfeiture clause in the event the tenant did not pay the rent within fifteen days after it was due. The tenant maintained its office in a distant city and would receive statements from its manager in Paducah the first of each month and would mail checks to the landlord around the seventh of the month, who would deposit them in the bank without acknowledging receipt. The last day the rent could be paid on the occasion in controversy was on January 15th. The check mailed the landlord around January 7, 1927, was not received by him, nor was the envelope containing it returned to the tenant, and the first knowledge the tenant had the rent was not paid was on January 17th, when the landlord declared a for-

feiture. Basing its opinion on the Hogg and the Rodes cases, supra, this court set aside the forfeiture granted below.

In the Rodes, Hogg and Paxton cases the equities were unusually strong in favor of the tenants and as the landlords had not been damaged or inconvenienced by the delay in receiving the rent, the court refused a forfeiture. But the facts in the record before us are quite different: Schwartz was putting the theaters in Shelbyville under different general management, and rumors were flying thick and fast in the town that a third theater was to be opened. Miss Ethington, the owner of the Shelby, attempted to obtain an option from the Lodge on the Strand while Enoch was negotiating with it for a lease. The Lodge had what it believed was reliable information that a third theater would be opened; and if so, it had reasonable grounds to believe the rental value of its property would in effect be destroyed, or at least be greatly reduced. Schwartz had previously removed practically all equipment from the Strand, except the seats, and had not operated the theater for some time. He saw fit to remain silent and not inform the representative of the Lodge that he was putting his two theaters in Shelbyville under a new general management. He had a perfect right to do this, but Schwartz is in no position to ask a court of equity to come to his rescue. He did not pay his rent within the days of grace provided in the contract, and the Lodge became alarmed about the future renting of the property and took advantage of the forfeiture clause contained in the lease contract for its protection, and declared a forfeiture and leased the Strand to another. A court of equity will not enforce a forfeiture against a tenant when the equities are on his side and the landlord is not damaged, yet it will not allow the tenant to place the landlord in a position of peril and then prevent the landlord from declaring a forfeiture for non-compliance with the lease. Wender Blue Gem Coal Company v. Louisville Property Corporation Company, supra, Blue Ridge Coal Company v. Hurst, 196 Ky. 432, 244 S. W. 892.

There is no evidence whatever in this record which even tends to establish plaintiff's allegation that the defendant Lodge conspired with Enoch to bring about a forfeiture of this lease, and there can be no just criticism directed at it for protecting itself from a situa-

tion that plaintiffs created. Great suspicion is directed at Enoch and the evidence strongly points to him as being the one responsible for plaintiffs' default in payment of the July rent, but Enoch was the agent of Schwartz and if Schwartz was defrauded by his own agent without inducement or acquiescence on the part of the Lodge, it is not liable to Schwartz. Addison v. Wilson, 238 Ky. 143, 37 S. W. (2d) 7. We therefore conclude the Lodge under the facts presented in this record was authorized to declare a forfeiture of plaintiffs' lease and to execute a lease upon this property to Enoch.

Enoch had been in the employ of the plaintiffs as their local manager and agent up to August 7th. On this date he accepted a position as local manager for Settos, and he knew Settos was taking over the general management of these two theaters for Schwartz. Enoch had been to Indianapolis to see Schwartz and learned his job was safe and he knew the connection between Schwartz and Settos. While Enoch was directly under Settos after August 7th, and was paid by him, yet he had not completely severed his agency relation with Schwartz, and he knew it was important to Schwartz and Settos that the lease on the Strand be retained. In the face of these circumstances Enoch had no moral or legal right to take a lease upon the Strand and the lease he obtained he holds as trustee for the plaintiffs. 2 Am. Jur. 204, Section 253; 2 C. J. 708, Section 365; Dodge v. Black, 53 S. W. 1039, 21 Ky. Law Rep. 992; Wilkerson v. Duerson, 177 Ky. 696, 198 S. W. 13.

It is insisted by Enoch that the lease held on the Strand was made and entered into between Schwartz and the Lodge for the purpose of restraining trade and stifling competition and both parties to that lease knew the Strand was not to be operated by Schwartz, but was to remain dark for the purpose of preventing any other persons or corporations from renting it and becoming his competitor, therefore, the lease was against public policy and was void and of no effect; that Enoch was under no moral or legal obligation to the plaintiffs not to take a lease on this property since the lease held by the plaintiffs was void. Counsel for the plaintiffs and counsel for Enoch devote much time in their briefs to discussing whether or not the lease Schwartz held on the Strand was in restraint of trade and therefore void. But it is not necessary for us to decide this question. If it were void because in restraint of trade, this fact

did not authorize the agent to acquire a title superior to his principal and then to oust him. In Hardenbergh v. Bacon, 33 Cal. 356, it was held that where the principal had a defective title his agent could not acquire the outstanding title for his own use. We can see no distinction between an agent ousting his principal by acquiring an outstanding title, than by destroying the legality of the principal's lease and then taking a good and valid lease to himself, thereby ousting his principal from the leased premises. So far as Enoch was concerned, it makes no difference whether the lease the Lodge executed to Schwartz on July 1, 1936, was in restraint of trade, as Enoch cannot attack that lease while he was the agent of Schwartz, or the agent of Schwartz' general manager, Settos. Davis v. Hamlin, 108 Ill. 39, 48 Am. Rep. 541; Gower v. Andrew, 59 Cal. 119, 43 Am. Rep. 242; Essex Trust Company v. Enwright, 214 Mass. 507, 102 N. E. 441, 47 L. R. A., N. S., 567.

The Lodge is in no position to attack this lease as being in restraint of trade since we have heretofore held in this opinion it had a right to declare a forfeiture against Schwartz and to lease the Strand to Enoch, as it in nowise colluded with Enoch in bringing about the forfeiture. So far as the Lodge is concerned, the lease it entered into with Enoch is valid, but Enoch does not hold this lease for his own use and benefit, but holds it as trustee for the plaintiffs. Under the pleadings in this case the plaintiffs do not ask that Enoch be adjudged their trustee in holding the new lease, and we do not know whether plaintiffs desire to take over this lease which is at an increase rental of $25 per month and covers a period of ten years, from August 13, 1938. Should plaintiffs desire to avail themselves of the lease the Lodge made with Enoch, they may make application by petition to the Shelby Circuit Court either in this proceeding or by an independent action. Civil Code of Practice, Section 639a—4. Jefferson County ex rel. Coleman v. Chilton, 236 Ky. 614, 33 S. W. (2d) 601; Bringardner Lumber Company v. Knuckles, 253 Ky. 292, 69 S. W. (2d) 345.

For the reasons set out in this opinion, the judgment is affirmed.