## Sackett v. Maggard.

(Decided March 1, 1911.)

### Appeal from Leslie Circuit Court.

1. Contracts—Where a contract is contained in two separate and distinct papers, they will be read together for the purpose of ascertaining the true contract.

2. Same—When it may be Modified by Parol Proof.—Parol evidence is not admissible to contradict a written contract, except in cases of fraud or mistake, or where there is vice in the contract.

CLEON K. CALVERT for appellant.

GREENE, VANWINKLE & SCHOOLFIELD and L. D. LEWIS for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The appellant Sackett brought this suit to recover from the appellee Maggard $481.50, the value of 332 trees which appellant charges Maggard had cut from his land, and for $1,000 punitive and exemplary damages for the maliciousness of the action of Maggard in connection with the alleged cutting. Martha Maggard, the wife of James L. Maggard, owned a tract of land situated upon the Big Branch of Rockhouse Creek of the Middle Fork of Kentucky River. On October 12th, 1905, Maggard and wife made the following contract with G. W. Sproul, to-wit:

"This agreement, mutually made and entered into, on this the 12th day of October, 1905, by and between Martha Maggard and James L. Maggard, of Leslie county, Kentucky, as of the first part, and G. W. Sproul, of Whitley county, Kentucky, as of the second part:

"Witnesseth, That for and in consideration of the sum of $5 on this day in hand paid to the party of the first part by the party of the second part, the receipt whereof

is hereby acknowledged, that said party of the first part. offers to sell and agrees to hereafter convey to said party of the second part or his assigns, in consideration of the sum of $10 per acre, by a deed containing a covenant of general warranty of the title thereto, a tract of land in Leslie county, Kentucky, on Big Branch of Rockhouse Creek of Middle Fork and abutted:

"On the north by the lands of James L. Maggard.

"On the south by the lands of James L. Maggard.

"On the east by the lands of James L. Maggard.

"On the west by the lands of Shade Baker.

"I reserve all the pine that will belt 3 feet and up and twenty oaks, all of which is to be cut from the stump within ten days from this date, and containing 50 acres, be the same more or less.

"It is expressly understood by the parties to this contract, and agreed to by them, and each and all of them, in consideration of the sum aforesaid, that if the said second party shall elect to purchase said land at said price per acre, he shall on or before the 12th day of February, 1906, pay to the said party of the first part, the sum of $50, which payment, together with the first payment aforesaid, shall constitute and be payment on the deferred purchase price for said land, and which payment when so made shall retain this agreement in full force and effect, and make this agreement a contract mutually binding upon the parties hereto, in all its terms. The party of the second part is to have said land accurately surveyed and the abstracts of title made at his expense, within a reasonable time, and pay first party the price herein agreed upon, and on demand and payment of such purchase money, party of the first part agrees to make party of the second part or his assigns a deed of general warranty to said land.

"Witness our hands, this the day and year first above written.

(Signed)   "Martha Maggard,
"James L. Maggard"

Sproul was acting as the agent of the appellant, F. M. Sackett. He had the lands surveyed and the title examined in November; whereupon it appeared that the Maggards could not make a good title to a small portion of the land, which was embraced in what was known as the "Woods' patent." The Woods' heirs had agreed, several years before, to make a deed to Mrs. Maggard,.

but had failed to do so, and in the meantime some of the joint owners had died, leaving infant heirs. Some differences arose between the parties by reason of this defect in the title, and the Maggards claim that the contract was abandoned. On the other hand, Sproul, acting for Sackett, elected to carry out the contract, and, on January 29th, 1906, tendered the Maggards a deed and the sum of $50 in gold, as provided by the contract. Mrs. Maggard was willing to execute the deed, but James L. Maggard declined to do so. It appears that he had not removed the timber from the land within the ten days provided by the contract, or up to the time of the tender; and he gives as his reason for declining to execute the deed that he did not intend to sell the land until he had cut the timber, or excepted the timber by an additional contract. He further said, "I intended to sign the deed as soon as I got the Woods' heirs to sign, and after I got the timber off that I had excepted." Sackett again tendered the $50 and a deed on February 12th, 1906, and on March 1st, 1906, and the Maggards still refusing to carry out the contract, Sackett sued them in April for a specific performance of the contract. On May 3rd, the parties settled their differences in the following contract, which was dated April 17th, but was not executed and delivered until May 3rd, to-wit:

"This agreement made and entered into on this the 17th day of April, 1906, by and between F. M. Sackett, of Jefferson county, Kentucky, as of the first part; and Martha Maggard and James L. Maggard, of Leslie county, Kentucky, as of the second part;

"Witnesseth, That for and in consideration of the covenants and agreements herein contained, the following things are agreed upon as between the parties hereto:

"1. The said party of the first part agrees to buy from the said parties of the second part at a price to be hereafter agreed upon between them, the merchantable pine timber trees from 12 inches in diameter and up, now standing upon the first tract of land described in the deed of conveyance on this day executed to the party of the first part by the parties of the second part, all unmerchantable pine timber upon said land being the property of the party of the first part without payment therefore.

"2. That inasmuch as the said parties of the second part have heretofore cut upon said land certain oak and pine timber trees which they have not had opportunity to remove therefrom, the said party of the first part here-grants them a free ingress and egress over, through and across said lands for the purpose of removing the same therefrom, until the first day of August, 1906, at which time said rights shall expire.

"3. No other timber shall be cut upon said land by the parties of the second part after this date.

"4. Where any of the timber so cut prior to this date; shall be along a public road or passway through or adjacent to said land, the parties of the second part may leave same there until such time as they can remove same, not to exceed sixty days from August, 1906.

"Executed in duplicate on this the 17th day of April,, 1906.

(Signed) "F. M. SACKETT,

"By CLEON K. CALVERT, .

"JAMES L. MAGGARD.''

At the same time, Maggard paid the costs of the suit for a specific performance, and Sackett dismissed it. Sackett subsequently learned, as he charges, that Maggard had, after the making of the contract, gone upon the land, and cut and taken therefrom the 332 trees complained of; whereupon he brought this suit to recover their value, with damages, and for an injunction to prevent the removal of the timber. The Circuit Judge was: of the opinion that the contract of October 12th, 1905, was modified by the contract of May 3rd, 1906, so as to allow Maggard to remove all of the down timber on the land at that time, and also that Sackett should pay Maggard for all merchantable pine lumber, twelve inches in diameter, standing on said land. Accordingly, appellant's petition was dismissed with costs, and he appeals.

Appellant contends that the provision in the new contract of May 3rd (April 17th), which permitted Maggard to remove from the land the oak and pine timber trees theretofore cut, refers to the twenty oak trees and. the merchantable pine timber mentioned in the first contract of October 12th, 1905; while the appellee contends. that the new contract recites that he had theretofore cut certain oak and pine timber trees upon the land in question, and that he was expressly given leave to remove all that had been cut by the 1st of August, 1906. Under-

either contract Maggard was entitled to all the merchantable pine timber; the only change made by the second contract being that, instead of requiring Maggard to cut and remove the pine trees, it provided that Sackett should pay him for them. It is well settled, that where a contract is contained in two separate and distinct papers, they will be read together for the purpose of ascertaining the true contract. The last paper may be a mere alteration of the first agreement, or a substitute for it. In the case at bar the two papers, which constitute the contract between these parties, being in no sense doubtful in their meaning, it is not permissible to contradict or explain them by parol testimony. There is no charge of mistake or fraud practiced by Maggard in obtaining either of these contracts; and that being true, we must confine ourselves to the plain meaning of the language employed. In Munford v. Green, 103 Ky., 141, this court laid down the rule governing cases of this character as follows:

"It is not alleged that there was any fraud or mistake in the execution of the deed or any vice therein. There is no claim that any language was used in the deed which was not intended by the parties to be used in expressing the contract between the parties. The sole question in this case is whether parol testimony, in the absence of any allegation of fraud or mistake, is admissible to contradict the legal import of the deed. We are of opinion that this can not be done. It is a well-settled rule in this State that parol evidence is not admissible to contradict written evidence, except in cases of fraud or mistake, or when there is vice in the contract."

Confining ourselves, therefore, to the text of the contract of April 17th, we find that it permits Maggard to remove from the tract of land he had that day conveyed to Sackett, all the oak and pine timber trees which Maggard had theretofore cut upon said land. If the parties had intended to confine Maggard to the removal of the twenty oak trees specified in the original contract of October 12th, 1905, it could easily have been so expressed, and should have been so expressed; but in making the terms broad enough to cover all the oak and pine trees that had been theretofore cut, Sackett expressly gave Maggard leave to carry away, and recognized his title to the oak and pine timber for which he now sues. As heretofore stated, Maggard was entitled to the pine timber

under the first contract, and to its value under the second or modified contract; and in no event, according to the contract as finally made, was Maggard to lose his right to the value of the pine timber. And in giving to Maggard the right to enter and remove it, he was not guilty of a trespass.

It appears, however, from the report of the receiver and the testimony of Hart, whom the receiver employed to count the trees cut from this land by Maggard, that twenty-six of 292 trees so cut were other than oak or pine trees, and consisted of poplar, walnut, cucumber, locust, beech and sugar trees. Under the contract these trees belonged to Sackett, and Maggard should account for them. The testimony is not very satisfactory as to their market value while located upon this tract of land **which is more or less inaccessible to the market. The** receiver says the trees of all kinds, including oak and pine, were worth from fifty to seventy-five cents per tree, and Maggard puts the value at the same figures. The receiver sold the 292 trees to Maggard for $140, which is a little less than fifty cents per tree. That, however, was a forced sale, and doubtless represents a low price. Fixing the price at seventy-five cents per tree, Maggard should account to Sackett for $19.50, the reasonable value of these twenty-six trees.

The judgment dismissing Sackett's petition is reversed, with instructions to enter a judgment in his favor for $19.50, and the costs of the action.