## Ferrell, et al. v. Childress, et al.

(Decided December 15, 1916.)

### Appeal from Pike Circuit Court.

1. Deeds—Defective Acknowledgment.—A writing in the form of a deed signed by the parties but which has no certificate of acknowledgment as required by the statute, operates as a conveyance as between the parties and those claiming under them and is effectual to pass the legal title to the land therein described.

2. Deeds—Character of Title Conveyed.—A purchaser having actual knowledge of such an instrument and its contents, but having no knowledge or notice that the obligees therein held the title under some trust or agreement with the obligors, took the title thereto from the obligees free from the impress of any such trust and as an innocent purchaser so far as the existence of such trust is concerned.

3. Appeal and Error—Finding of Chancellor.—Where the evidence is conflicting on a disputed issue, and the finding of the chancellor is not against the weight of the evidence, it will not be disturbed.

4. Deeds—Delivery—Acceptance.—Ordinarily a deed which has not been delivered to or accepted by the grantee is inoperative; but where conveyance is made to a grantee, not for his benefit, but to perfect a title which he had already conveyed to a third party, the refusal of the nominal grantee to accept the deed will not make it inoperative as against the real parties in interest who have accepted it and placed it on record.

5. Estoppel—When Grantor Estopped to Deny Acceptance of Deed.— The grantors in a deed made by them to nominal grantees but with the real purpose of perfecting a title theretofore made by the nominal grantees to other vendees, and knowing that such was the purpose of the conveyance, are estopped to deny that the grantees therein had not accepted the same.

6. Insane Persons—Contract of When Not Void.—The contract of one of unsound mind, but who has not been so adjudged, is not void, but only voidable and will not be set aside as to a bona fide purchaser without notice.

7. Adverse Possession—Joint Occupancy of Land.—Where one occupies land jointly with her brother and her son, after she has sold by contract her interest therein to them, is not holding adversely to them.

SAM C. STOWERS, F. W. STOWERS and HORATIO S. HOWARD for appellants.

J. S. CLINE and STATON & PINSON for appellees.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

In February, 1891, John Sanson died intestate a resident of Pike county, Kentucky, leaving surviving him his wife, Perlina, and seven children, to-wit: Sarah Ferrell, Elias Sanson, John C. Sanson, Nancy Hurley, Anthony Sanson, Causby Blankenship and S. K. Sanson.

There lived with the testator at the time of his death, and for some years before, his grandson, Tom Sanson, the son of Nancy Hurley.

At the time of his death the decedent was the occupant of a tract of land of several hundred acres involved in this litigation. His widow, Perlina, survived him some three or four years, and continued to live on the lands until her death, and the grandson, Tom Sanson, together with his mother, Nancy Hurley, also lived thereon. Some time after the death of John Sanson and during the life of the widow, F. K. Sanson also moved on the lands with the consent of the widow.

On the first of June, 1895, after the death of the widow, all of the children of John Sanson, except Sarah Ferrell, executed a writing in the form of a deed by which "in consideration of $120.00 paid John Sanson in his lifetime many years ago" they conveyed their respective interests to F. K. Sanson, one of the sons of John Sanson deceased, and Tom Sanson, the grandson. This writing, although in the form of a deed, contains no certificate of acknowledgment, but notwithstanding this was in January, 1899, put to record in the Pike county clerk's office.

In 1902, F. K. and Tom Sanson conveyed the whole tract of land to J. W. Peters, and he shortly thereafter conveyed an undivided one-half interest therein to the appellee Childress, and subsequently the other appellees became, through Peters, the owners of various interests therein.

In 1909 this action was brought by Mrs. Ferrell, praying to be adjudged the owner of one-seventh undivided interest as the heir at law of her father, John Sanson. During the progress of this suit Elias and John C. Sanson, Nancy Hurley and Causby Blankenship filed their petition to be made parties, and likewise asserted against the defendants their interests in the tract of land. F. K. Sanson, one of the sons and heirs at law, asserted no interest because he parted with all his interest in the deed to Peters, and Anthony Sanson asserted no interest because he was at the time claiming in another action the whole

of his interest in his father's estate out of another tract of land.

The defendants claimed title as against all of the heirs of John Sanson, except Sarah Ferrell, under the writing of June 1st, 1895; and as against Sarah Ferrell they asserted title because, as they claimed, the writing of June 1st, 1895, was only made to perfect the title of F. K. and Tom Sanson under a verbal sale made to them by John Sanson about the year 1884 or 1885, some years before his death, and that they, as claimed, had been put in possession by John Sanson of their respective portions of the land so sold by him at that time, and had had the actual adverse possession thereof since.

On the other hand, it is claimed by the appellants that there was no such sale by John Sanson to F. K. and Tom Sanson, and that the writing of June 1st, 1895, was executed by the parties thereto to enable F. K. Sanson and Tom Sanson to more effectually defend a contemplated law suit which was threatened against them by one Wilder to recover the whole of the tract of land, and that at the time the writing was executed it was understood and agreed between the parties that after the threatened litigation, F. K. and Tom Sanson would reconvey to the parties their interests if they succeeded in holding the land.

Pending this litigation, John Ferrell, the son of Sarah Ferrell, in 1911, was indicted, charged with murder, and the appellee Cline, who was one of the defendants in this action claiming an interest in the land through Peters, became one of the attorneys of John Ferrell. Before the trial of John Ferrell, Cline went to the neighborhood where most of the appellants lived and there, with the assistance of E. M. Ferrell, another son of Sarah Ferrell, and brother of John Ferrell, he effected a compromise of this suit with Mrs. Ferrell, her husband and son being present at the time, whereby he agreed to pay her $150.00 to execute a conveyance of her interest in the land, $50.00 of which was paid in cash and the other $100.00 of which he accepted as a fee to defend John Ferrell. Thereupon Mrs. Ferrell and her husband executed a deed conveying to F. K. and Tom Sanson her interest in the lands in controversy, and this deed was also executed by each of the appellants.

John Ferrell was convicted in 1911 and sentenced to the penitentiary for life, and thereafter Mrs. Ferrell and the other appellants, who had joined in the last deed to

F. K. and Tom Sanson, brought a separate action during the pendency of the original action wherein they sought to have set aside the deed so made in 1911 to F. K. and Tom Sanson, which deed of course inured to the benefit of and perfected the title of the vendees of F. K. and Tom Sanson if valid. This last suit was consolidated with the original suit, and upon a final hearing the court dismissed all of the actions against the defendants and quieted their title as against the heirs at law of John Sanson, and from that judgment this appeal is prosecuted.

For the appellant Nancy Hurley it is alleged that at the time of the execution of both of the instruments her husband was an imbecile and had not sufficient mind to comprehend the nature of his act or to understand its effect, and that therefore his act in so undertaking to join with her in a conveyance of her land was invalid and void, and that being so invalid and void as to him, was invalid and void as to her because under the statute she is authorized to convey her real estate only when her husband joins with her. It is not alleged, however, that her husband ever had at any time been adjudged to be of unsound mind or an incompetent, but the evidence does tend strongly to substantiate the allegation that he was in fact an incompetent.

The only questions which we deem it necessary to pass upon are: (1) What effect shall be given to the writing of June 1st, 1895; what interest, if any, did F. K. and Thomas Sanson take thereunder, and what interest, if any, did the vendees of F. K. and Thomas Sanson, who had actual knowledge of this paper and its contents, but had no actual knowledge of the circumstances under which it was executed, or of the alleged trust growing out of its execution, take? (2) Did Cline at the time of the execution of the deeds in 1911 overreach or impose upon the appellants or any of them in procuring their, execution, or were they under such duress because of the situation of John Ferrell as to enable them to avoid their acts in executing those deeds? (3) Assuming that the husband of Nancy Hurley was an incompetent at the time of the execution of the paper in 1895, what effect does it have upon the vendees of F. K. and Thomas Sanson to whom this knowledge had not been brought home?

Clearly the paper of June 1st, 1895, having no officer's certificate of acknowledgment was not therefore a record-

able instrument; and the fact that it was recorded, when it should not have been, will operate as notice to no one.

Being, however, a deed in form and expression, and duly signed and delivered by the grantor, and accepted by the grantee, it was effective as between them, and those claiming under them to pass the legal title to the land. Fitzhugh v. Croghan, 2 J. J. M. 433; Shoptaw v. Ridgeway, 22 Ky. L. R. 1495, 60 S. W. 723; Robsion v. Gray, 29 Ky. L. R. 1297, 97 S. W. 347; Burton-Whayne Co, v. Farmers & Drovers Bank, 130 Ky. 393; Cain v. Gray, 146 Ky. 402; 1 C. J., p. 770; Devlin on Deeds, sec. 465; Tiffany's Modern Law of Real Property, sec. 405.

Manifestly, if one has made an ineffectual attempt to make a conveyance and has signed an instrument of writing with that purpose, but his effort fails because of the failure of an official to make the proper certificate, the writing signed by him is not void for all purposes. It is nevertheless, if in other respects valid, a lawful obligation; and, while it is not a recordable instrument and does not impute notice to strangers although recorded, it is good as between the parties and those having actual notice thereof.

Contracts for the conveyance of real estate or what we commonly call bonds for title are not required to be acknowledged or even signed in the presence of officers, yet they are valid instruments and are enforceable in the courts. We therefore conclude that the paper of June 1st, 1895, while not a recordable instrument, nevertheless it passed the legal title to the property therein conveyed, and was a valid contract between the parties which was and is enforceable. It passed the legal title to F. K. and Thomas Sanson, although it did not impute notice to strangers. See cases heretofore cited.

Peters in his deposition said that when he bought the land from F. K. and Thomas Sanson, he relied upon the record and upon the fact that they were in possession of it; and while we have seen that the fact that this instrument was improperly recorded would not operate as notice to any one, yet it is fair to assume from Peters' evidence that he had seen this instrument on the record and had actual knowledge of its existence and its contents. There is nothing in the record to show, nor is it claimed that Peters had any knowledge or notice of, any equity or trust that might have existed because of any arrangement or understanding between F. K. and Thomas Sanson, and the heirs of John Sanson who signed that paper. So that Peters knowing from this paper that F.

K. and Thomas Sanson had the equitable title to the interests of the Sanson heirs who signed it, and knowing that they were in possession of the land, bought it from them without knowledge of any such trust. He knew from this paper that its only infirmity was that it lacked an acknowledgment necessary to make it a conveyance, but he also knew from it that while it did not convey the legal title, it did pass their equitable title and was an enforceable instrument. Unquestionably he took their title free from the impress of any equity or trust that might have existed as between the original parties, and as an innocent purchaser in so far as the existence of any such trust or equity is concerned.

Having seen therefore that the interest of all the parties who signed the writing of June 1st, 1895, passed thereunder to Peters, it only remains to inquire whether the interest of Mrs. Ferrell passed under the deed made by her to F. K. and Thomas Sanson in 1911.

At the time that deed was executed her son was in jail charged with murder; appellee Cline was a party to this suit and had been employed as an attorney to represent John Ferrell. Mrs. Ferrell was very much exercised naturally about the condition of her son and Cline being a party to this suit and desiring, of course, to secure his fee to defend John Ferrell, naturally went to see his parents. He doubtless had the double purpose of not only bringing about a compromise of this action, but of securing his fee, and the parties being in this situation, the husband and son of Mrs. Ferrell being present, after the whole matter was discussed and gone over thoroughly by them, the one being actuated by the commedable purpose of furnishing every possible assistance to her son who was in trouble, and the other being actuated by the double purpose of settling this litigation and securing a legitimate fee for the service which he expected to render John Ferrell, they agreed that Mrs. Ferrell and her husband should convey her interest in the lands involved and that he should pay her $150.00 for such conveyance, $50.00 of which was to be paid in cash and $100.00 to be retained by him as a fee to defend John Ferrell.

The evidence for the plaintiffs on this issue tends to show that Cline said that John Ferrell had a very serious case and that he was liable to be hung or electrocuted, but that if Mrs. Ferrell would make this deed he would see that he was acquitted and would send him

home shortly after court. On the other hand the evidence for the defendants by Cline as well as by two or three disinterested witnesses is that no such thing occurred; that he only told them that he would do the best he could for John Ferrell and represent him to the best of his ability. The evidence for the plaintiffs would seem to make out a case which would justify the cancellation of that deed, yet it is so conflicting that, giving due weight to the finding of the chancellor, we are not inclined to set it aside.

But it is insisted for the appellants that that deed which was made to F. K. and Thomas Sanson as grantees was never accepted by them or either of them and that therefore it was of no effect whatever.

Certainly it is necessary not only to deliver a conveyance but that there should be an acceptance of some kind by the grantee, under ordinary conditions. But here we have a deed being made to grantees, not for their benefit, but to perfect a title which they had already made or undertaken to convey to a third party. The parties grantor in that conveyance understood perfectly that they were making the conveyance not for the benefit of F. K. and Thomas Sanson, but for the benefit of their vendees and to perfect a title which F. K. and Thomas Sanson had attempted to convey to them. The names of F. K. and Thomas Sanson were used as vendees therein as a matter of convenience and not because they were the real parties in interest.

Under these circumstances we think that there can be no doubt the grantors who fully understood they were making a conveyance to one set of grantees really for the benefit of their vendees would be estopped to say that the conveyance was never delivered to or accepted by the grantees. In fact the real grantees, the vendees of F. K. and Thomas Sanson, did accept the deed and had the same put on record. It would be in aid of the perpetration of a fraud to permit these nominal grantees, by declining to accept a deed made to them for the benefit of others, to defeat the purpose of the real parties in interest.

There is no claim that either Peters or any of his vendees had any knowledge whatsoever of any alleged incompetency or imbecility of Nancy Hurley's husband when he signed the paper of June 1st, 1895, or at any other time, and in the absence of such knowledge they cannot be affected thereby.

The contract of one of unsound mind who has not been so adjudged is not void but only voidable and will not be set aside as to a bona fide purchaser without notice. Campbell v. Kerrick, 142 Ky. 279.

The fact that Nancy Hurley continued to occupy, with her brother and son, the land in question after signing the paper of June 1st, 1895, whereby she divested herself in their favor of all her equitable interest in the property, cannot be treated as a hostile holding by her against them; clearly after the execution of that paper her holding could only have been amicable as to them and could not therefore inure to the benefit of Mrs. Ferrell in her claim of adverse possession.

Judgment affirmed.