## Hurley, et al. v. Hackney, et al.

(Decided March 21, 1924.)

### Appeal from Pike Circuit Court.

1. Vendor and Purchaser—Prior Unrecorded Deed Valid if Subsequent Grantee had Notice.—An unrecorded deed is valid and must prevail over a subsequent deed if the subsequent grantee knew or had notice of its existence prior to purchase, or had information sufficient to put him on inquiry that would have led to its discovery; such information being equivalent to notice.
2. Vendor and Purchaser—Evidence Held to Show Knowledge of Unrecorded Deed.—In a suit to cancel deeds, evidence held to show by the preponderance thereof that a purchaser of land had knowledge, before his purchase, of an unrecorded deed from a former owner.
3. Improvements—Purchaser with Notice of Superior Claim Not Entitled to Remove Improvements.—The court is liberal in favor of innocent purchasers and persons holding under a bona fide claim of right in allowing compensation for enhanced value arising from improvements, but a claimant of real estate may not remove improvements made with actual notice of the rightful owner's superior claim.

PICKLESEIMER & STEELE for appellants.

J. C. CANTRELL for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming on original and reversing on cross appeal.

R. T. and W. H. Hackney and Mrs. Eli (Josie) Hurley are brothers and sister. Dolly, wife of Walter

Mounts, and Louisa, wife of Harrison Mounts, are children of R. T. Hackney.

R. T. Hackney, a dominant spirit, directed the transactions of his children. At his instance on the 1st of January, 1917, Walter and Dolly Mounts conveyed to William Hackney a lot 53 feet in width, fronting on the Williamson and Pond Creek Railway right of way and running back to Pond creek. This was a gift to William from R. T. Hackney, though he says he negotiated at the time the entire tract of land belonging to his daughter, paying her a valuable consideration therefor. The deed in question was regularly executed, acknowledged and delivered but was not recorded until the — day of December, 1918.

In July, 1917, Dolly and Walter Mounts conveyed their entire tract of land, including this 53 foot lot, to Harrison and Louisa Mounts without referring to it in the deed.

On the — day of August, 1917, Harrison and Louisa conveyed to Eli C. Hurley and his wife Josie 108 feet fronting on the railway right of way, including the 53 feet formerly deeded to William Hackney and running back a distance of 75 feet, this being something like one-half the depth of the lot. At that time there was a small residence on a portion of the lot conveyed and the entire 108 feet was under the same fence and in cultivation, but there were no buildings on the 53 feet claimed by Hackney.

In March, 1918, Eli Hurley built a store house on the William Hackney lot and later built a barn thereon and constructed a road to the pike, all of these improvements costing him, as he claims, about $3,000.00.

Upon the completion of the store building he installed a stock of goods and has since engaged therein in the mercantile business. Subsequently William Hackney sued for cancellation of the deeds from Dolly and Walter to Harrison Mounts and from Harrison Mounts, &c., to Eli C. Hurley, &c., and for a recovery of the described premises.

Judgment was awarded cancelling the deeds so far as they affected this lot and restoring it to plaintiff, but awarding the improvements to Eli C. Hurley and giving him six months in which to remove same. The Hurleys have appealed and W. H. Hackney has prosecuted a cross appeal. All the parties in interest have testified.

Dolly states that she informed Harrison Mounts and his wife of the conveyance to William Hackney before she made the conveyance in July, 1917, but that she included the lot in the deed on the idea that her father would give her uncle Bill a lot elsewhere. Louisa says she informed her aunt Josie and uncle Eli of the condition of the title and that he visited William Hackney and examined the deed and that on his return he told her the deed had not been recorded and for that reason was not any good and that he would take the risk.

William Hackney testifies that Hurley visited him and asked to see the deed and that his wife showed it to him; that Hurley said the deed was good; that Harrison Mounts had been trying to sell the land to him but that he had not bought nor would not buy.

R. T. Hackney testifies that he made a trade with his daughter Dolly and her husband for the entire tract of land and as a part of the consideration had them to make the deed in question to W. H. Hackney, it being a gift on his part. He also directed the deed to be made to Harrison Mounts up to Bill Hackney's line, but by mistake instead of calling to Bill Hackney's line it called for W. J. Hackney's line, and this included the lot in question; that all parties, including Eli Hurley and wife, knew that he had deeded the land to Bill Hackney.

The defendant Eli Hurley does not deny any of these conversations. He does state that he did not learn of the existence of the Bill Hackney deed until after his deed was recorded and is positive that the conversation between him and Bill Hackney, at which time he examined the latter's deed, occurred after his (Hurley's) deed had been recorded, but otherwise does not contradict any of the statements made.

It is further testified by one of the witnesses that Mrs. Josie Hurley told her husband not to buy the land, that included Bill's lot. She denies this and claims that her brother R. T. Hackney told her the title to the lot was good, though she admits she knew her brother Bill had a lot somewhere near before this purchase.

This deed is admittedly valid and must prevail if the Hurleys knew or had notice of its existence prior to their purchase, and if either of them had information sufficient to put him on inquiry that would have led to its discovery, such information would be equivalent to notice. Everidge v. Martin, 164 Ky. 505; Gates v. Shan-

non, 200 Ky. 387; Virginia Coal and Coke Co. v. Combs, 186 Ky. 261; Farrell v. Childress, 172 Ky. 760.

If the conversations occurred, as testified in appellees' evidence, appellants had both notice and actual knowledge of the prior conveyance.

If they did not so occur it is more than strange that Eli Hurley does not contradict any of them, and all things considered the preponderance of the evidence is to the effect that he knew of and saw the deed before his purchase but erroneously concluded that as it had not been recorded it was invalid, and in ignorance of the law decided to take the risk. This seems to have been the opinion of the chancellor and we see no reason for disturbing his judgment in that respect.

As to ameliorations; our court has been quite liberal in favor of innocent purchasers and persons holding under a *bona fide* claim of right in allowing compensation for the enhanced value of real estate arising from the construction of lasting and valuable improvements. Darnell v. Jones, 24 Rep. 2093; Thomas v. Thomas, 16 B. M. 420; Floyd v. Mackey, 23 Rep. 2030; Bell's Heirs v. Barnett, 2 J. J. M. 516.

On the other hand, it is well settled that a claimant of real estate may not recover from the rightful owner for improvements made with actual notice of the other's superior claim. Loeb, et al. v. Connelley, et al., 160 Ky. 91.

By their own admissions appellants had actual knowledge of appellees' claim before making the improvements, and we have just decided it was a superior claim. Indeed, if appellees' claim had been inferior the appellants would have held the lot and there would have been no reason to consider the question of improvements; *vice versa,* as appellees could not recover the lot except by showing that appellants were not *bona fide* purchasers without notice, a decision for appellees on that question precludes a finding that appellants made the improvements *bona fide* without notice.

The rule may sound harsh and in this case applies with unusual severity; indeed, we might wish we could follow the merciful judgment awarded by the chancellor, but such an exception would be an invitation for claimants of all kinds to speculate upon the rights of others by erecting improvements to be used if the lands were

held but with the expectation of being reimbursed if recovered by the owner.

The result would be confusion and insecurity in the ownership of all real estate. We conclude that the chancellor erred in permitting the improvements to be removed.

Wherefore, judgment is affirmed on the original and reversed on the cross appeal.