### Hardin v. Kazee et al.

(Decided April 28, 1931.)

C. F. SEE, JR., for appellant.

W. R. McCOY for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Oscar Kazee, on the 4th day of June, 1924, resided with his wife, America Kazee, at Van Lear, Ky. At that time he owned "all the minerals of every kind and description in certain land situated on Cold Water Fork of Rockcastle Creek in Martin County, Ky."

Mary L. Hardin and Roscoe Kirk resided at Inez, Ky. On that date, Oscar Kazee and Mary L. Hardin agreed on the price, terms, and conditions of the sale to her of his mineral rights in that land. H. C. Cassidy and Mary L. Hardin and Oscar Kazee were together at the law office of J. B. Clark in Inez, Ky., where a deed was prepared by J. B. Clark to be executed by Oscar Kazee and America Kazee, conveying to Mary L. Hardin the "mineral rights in, to, and under certain lands in Martin County, Ky." After the deed was written by Clark, it was signed and acknowledged by Oscar Kazee before J. B. Clark as notary public, which, together with his old deed, were delivered by Oscar Kazee, to Mary L. Hardin. As the consideration she agreed in the deed to pay him $225, to surrender as paid a certain note she held against him, to pay for him a certain other note that Mr. Stepp held against him, all amounting to $800. She paid to Oscar Kazee, by delivering to him at the time, $1 in

528

money. At that time a check was written by J. B. Clark signed by Mary L. Hardin, in this language:

"Inez, Ky., June 4, 1924.

Inez Deposite Bank.                                73519

"Pay to the order of Oscar Kazee, $225.00, Two hundred twenty five & no/100 dollars for Payt, on deed to be paid when deed is acknowledged by America Kazee and delivered to Inez Deposit Bank.

"(Signed)  Mary L. Hardin."

In Clark's office, Mary L. Hardin while she had possession of it, made the statement that she would mail the deed to America Kazee, the wife of Oscar Kazee, for her signature and acknowledgment. She asked Mr. Clark if it would be safe to send it by Oscar: He responded: "Absolutely." Oscar Kazee thereupon stated he could get the deed back a day early by taking it himself and returning it by mail. Then she delivered it to him. Immediately thereafter she and Oscar Kazee went to the Inez Deposit Bank at Inez, Ky., where Mrs. Hardin delivered to R. L. Hale, the cashier of the bank, the check for $225, with instructions to hold it until Oscar Kazee sent the deed to the bank. The bank retained the check. It had possession of it at the time of the taking of the depositions herein. Oscar Kazee did not indorse it, nor "did he make any arrangements about getting any money there to close the deal."

Roscoe Kirk claims that he began about six months previous to June 4, 1924, to negotiate with Oscar Kazee with a view of purchasing his mineral rights, involved in this litigation. He had corresponded with him for that purpose. Oscar Kazee was at his garage in Inez, Ky., on the 3d day of June, 1924, when he discussed with him the purchase of the mineral rights. They agreed on the sale and purchase of the same, but no writing was executed between them. On June 4, 1924, they again discussed the subject, but closed no deal. On June 5, 1924, he went to Paintsville, Ky., where he met Oscar Kazee and his wife, America Kazee, and there closed the deal with them for the minerals and mineral rights. They executed, acknowledged, and delivered to him a deed conveying the same to him. By the deed which was executed and delivered to him by Oscar Kazee and wife, Kirk assumed the payment to Mrs. Hardin of a note from Oscar

Kazee to her for $200 secured by mortgage, and a note of R. L. Stepp for $375, secured by mortgage, and paid to them $250 by check on the Inez Deposit Bank, Inez, Ky. The check was signed, "J. D. Kirk & Son," the style of the firm in which he engaged in business at Inez, Ky.

The appellant, Mary L. Hardin, as plaintiff, filed this action against Oscar Kazee, America Kazee, and Roscoe Kirk as defendants. She alleged that on the 4th day of June, 1924, Oscar Kazee made, executed, and delivered to her for an agreed consideration, which was paid, a deed conveying to her whatever right, title, or interest that he had in the minerals of every kind and description in and under the land described in the petition. After this was done, she alleges that he agreed to take the deed to Van Lear, Ky., to have the defendant America Kazee acknowledge it, and by which "she was to convey any interest she might have in the property by reason of her being the wife of defendant, Oscar Kazee, but had never returned it to the plaintiff." She says that, by reason of its delivery to her in the office of J. B. Clark, she is the owner and in the actual possession of the property therein described, and is "entitled to have the defendant, Oscar Kazee, return the deed to her, and in case he refuses to do so to have the commissioner of the court execute a deed to her conveying whatever right, title or interest the said Oscar Kazee had in said property to her." In the second paragraph, she sets out that "Roscoe Kirk, with full knowledge of her deed from Oscar Kazee, did, on the 5th day of June, 1924, have Oscar Kazee to make him a deed, attempting to convey the title to said property to him." His deed, she avers created a cloud on her title, and she is entitled to have it removed. The defendants each file a separate answer, traversing the allegations of her petition. Roscoe Kirk in his answer sets up the deed from Oscar Kazee and America Kazee to him, and asserts title to the minerals by reason thereof, and affirmatively alleges that no delivery of the deed by Oscar Kazee was made to Mary L. Hardin. He pleads that he is an innocent purchaser for value of the mineral rights of Oscar Kazee, without notice of the appellant's deed.

Evidence was taken and, on submission to the court, Roscoe Kirk was adjudged to be the owner of the minerals and mineral rights conveyed to him by Oscar Kazee

and America Kazee, subject to the mortgages of Mary L. Hardin and R. L. Stepp for $200 and $375, respectively.

The appellant insists that the deed of Oscar Kazee to her and its delivery in the office of Mr. Clark passed title to her to all the minerals therein described, and that appellee, Roscoe Kirk, is shown by the evidence to have had actual knowledge of the existence of her deed and of her purchase before his deed was executed and delivered to him, and that she is entitled to have his deed canceled. To sustain her contention she cites Ward v. Rittenhouse Coal Co., 152 Ky. 228, 153 S. W. 217; Justice v. Peters, 168 Ky. 583, 182 S. W. 611, 613; Fletcher v. Harl, 3 Ky. Law Rep. 335; Hurley v. Hackney, 202 Ky. 452, 260 S. W. 16; Simms v. Richardson, 2 Litt. 274; Hardin's Ex'rs v. Harrington, 11 Bush, 367; Bartram v. Damron, 105 W. Va. 284, 142 S. E. 253; Ferrell v. Childress, 172 Ky. 760, 189 S. W. 1149.

On the vital issue in the case, appellees cite and rely in part on the same authorities. The paramount question is the correct application of the general universal rules to the proven facts.

In Justice v. Peters, supra, it is said:

"The delivery may be actual, or it may be a constructive delivery; but, in either state of case, the intent of the grantor to transfer the title to the grantee is essential and necessary to constitute a delivery. This intention to transfer the title must, however, be accompanied with some act of the grantor, by which he parts with power and control over the deed for the benefit of the grantee, for intention alone will not constitute a delivery."

In Roark v. Hogg, 219 Ky. 78, 292 S. W. 465, and in Brandenburg v. Botner, 221 Ky. 7, 297 S. W. 702, 704, we quoted the rule stated above, with approval.

In Brandenburg v. Botner, supra, we also quoted with approval from 8 R. C. L. pp. 976, 977, 978, the principles governing the delivery and acceptance of a deed, in this language:

"The intention of the parties is an essential element of delivery of a deed. It has been called the essence of delivery, and not only is often the determinative factor among other facts and circumstances, but is the crucial test where constructive delivery is relied upon. Categorically stated, the rule

is that to the delivery of a deed it is essential that there be a giving by the grantor and a receiving by the grantee, with a mutual intention to pass the title from the one to the other; or, conversely, that it is sufficient when the deed is executed, and the minds of the parties meet, expressly or tacitly, in the purpose to give it present effect. . . .

"Thus subject to the rules as to the effect and cure of formal defects, a deed will not be regarded as delivered while anything remains to be done by the parties who propose to deliver it, as where it is delivered on condition that it shall not become effective until executed by all the grantors, and it is never so executed. Nor can a deed be delivered and accepted partially for the purpose of conveying title to the grantee, and yet so as not to give effect to its conditions, recitals, and limitations. . . .

"There is no universal test, applicable to all cases, whereby the sufficiency of delivery can be determined, and it is impossible to state in exact terms what shall or shall not constitute a delivery; wherefore whether the facts relied on to establish a delivery in a particular case are sufficient for that purpose is often a difficult question. Indeed it has well been said that an arbitrary rule ought not to be laid down."

In Ward v. Rittenhouse Coal Co., supra, this court said:

"It is essential to the validity of a deed as an executed contract that it should be delivered by the grantor and also accepted by the grantee."

In the case of Ball v. Sandlin, 176 Ky. 537, 195 S. W. 1089, 1091, we stated that "the mere placing of a deed in the hands of one of the grantees does not necessarily constitute a delivery, although a strong presumption of delivery may arise therefrom."

The decisive issue here to be determined is one of mixed question of law and fact. It is largely a question of fact. It depends largely on the intention of Oscar Kazee and of Mary L. Hardin at the time he signed and acknowledged the deed, and physically delivered it to her. Their words and their actions at the time of the entire transaction are both to be looked to for the purpose of ascertaining and determining what they intend

to do and actually did. The delivery and acceptance of the deed are as essential as the signature of the grantor. The delivery of the deed is the act by which the grantor divests himself, and the acceptance of it is the act by which the vendee vests himself with title to the property. Both acts must concur or agree. Kirby et al. v. Hulette et al., 174 Ky. 257, 192 S. W. 63, and cases cited. The minds of the parties, as in the making of every contract, must meet as to both the delivery and the acceptance. Not only the words and acts of the parties, but the language of the written instruments executed by the parties as part of the transaction, must be considered and given effect in ascertaining and determining their intentions. If the intention of the parties is that by the deed the grantor intends to divest himself of title and the grantee intends to accept it upon the terms contained in it, and both parties treat it as complete, it will be deemed in law to have been so accepted. Interstate Investment Co. v. Bailey, 93 S. W. 578, 29 Ky. Law Rep. 468; Shotpaw v. Ridgway, 60 S. W. 723, 22 Ky. Law Rep. 1496; Ward v. Small, 90 Ky. 198, 13 S. W. 1070, 12 Ky. Law Rep. 58; Bunnell v. Bunnell, 111 Ky. 566, 64 S. W. 420, 65 S. W. 607, 23 Ky. Law Rep. 800, 1101; Sasseen v. Farmer, 179 Ky. 632, 201 S. W. 39; Sullivan v. Sullivan, 179 Ky. 686, 201 S. W. 24.

The deed which was signed and acknowledged by Oscar Kazee and which appellant claims was delivered to and accepted by her, is not now in the record. It is shown that, at the time the appellee Roscoe Kirk obtained his deed from Oscar Kazee and America Kazee, it was surrendered to him by them, and that he has mislaid or lost it. However, it is not disputed that it was properly prepared and was in the usual regular form and within itself complete. We have quoted the check which Mary L. Hardin had Clark to prepare for her, and which she signed as a part of the transaction in which the deed of Oscar Kazee and his wife to her was written and signed and acknowledged by Oscar Kazee. It and the deed were executed by the parties contemporaneously in reference to the same subject-matter. Therefore the two are to be considered and interpreted as one instrument. Hughes v. Saunder's Ex'rs, 3 Bibb (6 Ky.) 360; Knott's Adm'r v. Hogan, 4 Metc. 99; Park's Ex'rs v. Cooke, 3 Bush (66 Ky.) 168; Sackett v. Maggard, 142 Ky. 500, 134 S. W. 888; Shuttleworth v. Ky. Coal, Iron & Dev. Co., 60 S. W. 534, 22 Ky. Law Rep. 1341; Macpherson v. Bacon's Ex'r,

180 Ky. 773, 203 S. W. 744; Terrell v. Cheatham, 200 Ky. 667, 255 S. W. 262; United Equipment Co. v. D. T. Bohon Co., 203 Ky. 527, 263 S. W. 27; Luten Bridge Co. v. Grant County, 206 Ky. 528, 267 S. W. 1082.

In the check are these words: "For payment on deed to be paid when deed is acknowledged by America Kazee and delivered to Inez Deposit Bank." She alleges that the deed was delivered for "an agreed consideration which was paid." The language of the check contradicts this allegation of her petition.

This language in the check must be given the same effect as if it were written by the parties in the body of the deed. At the time she and Oscar Kazee were at the bank with the check, she directed the cashier to "hold the check until deed was made and turned over." Considering the words, the acts of the parties, and the language in the check, we are not prepared to say that the appellant intended by the receiving of Oscar Kazee the actual possession of the deed thereby to vest herself with title to the property, whether America Kazee, either with or without reason, failed or refused to sign, acknowledge, and return the deed to her. The language in the check is equivalent to the insertion in the deed of a proviso that the property will not be paid for and the deed accepted without the signature of America Kazee. With this view of the case it is not necessary to consume time and space with a discussion of the question whether the appellee Roscoe Kirk was an innocent purchaser for value and without notice.

The judgment is in harmony with our view, and is therefore affirmed.