**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0444n.06
Filed: May 26, 2005

**No. 04-5395**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| O'KENTUCKY ROSE B. LIMITED PARTNERSHIP, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| KATHERINE BURNS, EXECUTRIX OF THE ESTATE OF CECIL RODNEY BURNS, DECEASED, AND INDIVIDUALLY, | ) ) ) ) ) | WESTERN DISTRICT OF KENTUCKY |
| Defendant-Appellee. | ) | |

Before: DAUGHTREY and GIBBONS, Circuit Judges, and SARGUS, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge**.  O'Kentucky Rose B. Limited Partnership

("Kentucky Rose") entered into a Purchase Agreement with Katherine and Cecil Rodney Burns ("the

Burns defendants") for the option to purchase a fifty-acre tract of land.  The purchase was never

consummated, and in November of 1999, Kentucky Rose filed suit against the Burns defendants,

claiming breach of contract, violation of the implied warranty of good faith and fair dealing, and

intentional interference with prospective business relations.  The Burns defendants filed a

counterclaim against Kentucky Rose, claiming breach of contract and tortious interference.  After

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

a trial, the jury found that the Burns defendants had breached the Purchase Agreement but found for the Burns defendants on Kentucky Rose's other two claims, and awarded Kentucky Rose no damages on the breach of contract claim. Kentucky Rose moved for post-judgment relief, claiming, in relevant part, that a new trial was warranted (1) on the issue of damages and (2) because the jury verdict was inconsistent. The district court refused to grant a new trial on either ground. Kentucky Rose now appeals from these decisions.

For the following reasons, we affirm the ruling of the district court.

**I.**

The Burns defendants were the owners of fifty acres of land in Owensboro, Kentucky. Kentucky Rose, a Michigan limited partnership formed by David Rose, the sole general partner, wanted to develop and resell the Burns's property, which was located close to a busy thoroughfare in Owensboro. On April 24, 1997, Kentucky Rose entered into a purchase agreement with the Burns defendants for the fifty-acre tract of land. The Purchase Agreement, which operated like an option contract, stated that the purchase price would be $105,021.00 per acre, with the total price not to exceed $5,250,000.00.

The Agreement required Kentucky Rose, upon the Burns's acceptance of the Agreement, to pay a ten thousand dollar earnest money deposit. Thereafter, Kentucky Rose was to pay the Burns defendants ten thousand dollars each month for four months during the time that due diligence was to be completed. Kentucky Rose was given the option of extending this due diligence period fourteen times, thereby delaying the closing date, during which time Kentucky Rose would be required to pay the Burns defendants ten thousand dollars for each additional month. The agreement

stated that these monthly payments were non-refundable, unless the property was condemned prior to closing, and provided that in the event that the purchase of the property was completed, the monthly payments would be credited toward the payment of the purchase price. The Purchase Agreement also contained a section on representations, warranties and covenants made by the Burns defendants for the benefit of Kentucky Rose. One of these such warranties was the promise made by the Burns defendants not to market the fifty-acre property after the effective date of the agreement. Section 15 of the Agreement provided that in the event of a default by Kentucky Rose, the sole remedy available to the Burns defendants would be to declare a forfeiture and retain the deposits. Section 15 further provided that in the event of a default by the Burns defendants, Kentucky Rose would have the option to either enforce the terms of the Agreement or "be entitled to full termination of this Agreement."

Around November of 1997, Kentucky Rose sought to extend the contract. Mr. Burns said the possibility of an extension could be discussed in the spring. In the same time period, Kentucky Rose began preliminary negotiations with the Aronov Company, a company that had recently acquired the Towne Square Mall, located directly adjacent to the Burns property. Representatives from Kentucky Rose and Aronov met in July 1997. The Aronov representatives told Kentucky Rose that a division of their company was potentially interested in purchasing the Burns property for the purpose of developing another shopping center. John Argo, an Aronov representative, went to visit the Burns property and, while there, introduced himself to Mr. Burns, told Mr. Burns that he was a potential customer of Kentucky Rose, and inquired into the availability of the property. Mr. Burns gave Argo information about the property and told Argo the termination date of the contract with

Kentucky Rose, information that Kentucky Rose had previously elected not to share with Aronov despite Aronov's inquiries. Mr. Burns agreed to contact Argo once the contract with Kentucky Rose expired. Several other exchanges occurred between Aronov and Mr. Burns during the lifetime of the Purchase Agreement. No one informed Kentucky Rose of any of the communications between Aronov and Mr. Burns.

Mr. Burns agreed to extend the period of option payments by nine months until July 26, 1999 upon the request of Kentucky Rose. On July 7, 1999, Mr. Burns met with Kentucky Rose representatives regarding the contract. At this meeting, David Rose claims that he offered Mr. Burns $250,000, all of which would be non-refundable and not applicable to the purchase price, to extend the Purchase Agreement for another nine months, with a personal guarantee to close. Mr. Burns refused, and instead granted Kentucky Rose a one month extension to August 26, 1999. On August 17, 1999, Rose sent Mr. Burns a written request to grant a ninety day extension on the Purchase Agreement, which Mr. Burns refused.

Kentucky Rose learned of the discussions between Burns and Aronov in September 1999. On November 9, 1999, Kentucky Rose filed suit against the Burns defendants in the Western District of Kentucky, alleging breach of contract based on the Burns defendants' contact with Aronov in violation of the "no-marketing" provision of the contract and intentional interference with prospective business relations. Kentucky Rose filed a series of amended complaints, asserting in its fourth amended complaint the additional claim of violation of the implied covenant of good faith and fair dealing. In response, the Burns defendants filed a counterclaim against Kentucky Rose, alleging breach of contract and tortious interference. Both parties moved for summary judgment.

The district court granted summary judgment to Kentucky Rose on the Burns defendants' tortious interference claim, but found summary judgment disposition inappropriate on all other claims. The remaining claims went to trial, and a jury found that the Burns defendants had breached the Purchase Agreement by marketing the property during the lifetime of the agreement but found that the Burns defendants did not violate the implied covenant of good faith and fair dealing and did not intentionally interfere with Kentucky Rose's prospective business advantage. The jury awarded Kentucky Rose no damages.

Kentucky Rose filed a post-trial motion with the district court, seeking (1) a new trial on the issue of whether the Burns defendants breached the implied covenant of good faith and fair dealing, (2) a new trial on the issue of damages, (3) to alter or amend the judgment to provide that all counterclaims against Kentucky Rose were dismissed, and (4) to alter or amend the judgment to provide an award of costs for Kentucky Rose. The district court denied Kentucky Rose's request for a new trial on both grounds and declined to award Kentucky Rose costs but granted Kentucky Rose's motion to amend the judgment to provide that all counterclaims against Kentucky Rose were dismissed. Kentucky Rose filed a timely appeal with this court on April 6, 2004.

## II.

## A.

Kentucky Rose contends that the district court erred in failing to grant a new trial on the issue of damages. In diversity cases, this court applies federal law in reviewing a denial of a motion for a new trial. *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 506 (6th Cir. 1998). This court reviews a district court's denial of a motion for a new trial pursuant to Federal Rule of Civil

Procedure 59 for an abuse of discretion. *Rush v. Ill. Cent. R.R. Co.*, 399 F.3d 705, 727 (6th Cir. 2005). We may grant a new trial "if the verdict is against the weight of the evidence, if the damages award is excessive, or if the trial was influenced by prejudice or bias, or otherwise unfair to the moving party." *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000). However, the jury verdict should be accepted if it could have reasonably been reached. *Id.*

Kentucky Rose argues that the jury's finding that the Burns defendants had breached the no-marketing provision of the contract entitled it to damages equaling "full termination" pursuant to section 15 of the contract. Section 15 of the contract provided that in the event of a default by the Burns defendants, Kentucky Rose would be entitled to either enforcement of the contract or "full termination" of the contract. Kentucky Rose argues that the Burns defendants' breach of the no-marketing provision constituted a default, thereby entitling Kentucky Rose to "full termination," an amount which Kentucky Rose argues equals the due diligence payments, legal fees, and associated fees totaling $606,167.01.

The district court rejected this argument, finding that the Burns defendants' breach of the no-marketing provision did not constitute a default under Kentucky law. Thus, the district court found that the "full termination" provision of section 15 was not triggered by the Burns defendants' conduct. In so finding, the district court noted that the ordinary definition of default is "'the omission or failure to perform a legal or contractual duty; especially the failure to pay a debt when due.'" The district court thus found that the Burns defendants' breach of the no-marketing provision did not constitute an omission or failure to perform a duty, and, thus, the breach of the no-marketing provision did not constitute a default.

The interpretation of contract language is a question of law to be reviewed *de novo*. *Olin Corp. v. Yeargin Inc.*, 146 F.3d 398, 403 (6th Cir. 1998). Because the parties agreed that the contract would be governed by Kentucky law, we look to Kentucky case law to aid in our interpretation of the contract. According to Kentucky law, "[t]he primary object in construing a contract . . . is to effectuate the intentions of the parties." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W. 3d 381, 384 (Ky. App. 2002). Absent allegations of mistake or fraud, Kentucky law directs this court to construe the wording of the contract in accordance with its plain meaning. *Sackett v. Maggard*, 134 S.W. 888, 890 (Ky. App. 1911).

The contract itself does not explain what actions by the parties constitute default triggering the "full termination" remedy of section 15. Thus, it is necessary to look to the plain meaning of the word "default" in order to determine whether the Burns defendants' conduct in breaching the no-marketing provision qualifies. "Default" is defined as "[t]he omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due." Black's Law Dictionary (8th ed. 2004), or "failure to act; neglect; . . . failure to perform some legal obligation or requirement." Oxford English Dictionary, http://dictionary.oed.com/. Although no hard and fast definition of default can be gleaned from Kentucky case law, the Kentucky Supreme Court has previously adopted the definition of default as "nonpayment without the consent of the obligee." *Bass v. Foster*, 476 S.W. 2d 181, 182 (Ky. 1972).

An independent review of the language of section 15 of the Purchase Agreement leads us to affirm the denial of a new trial on the issue of whether Kentucky Rose was entitled to damages pursuant to the contract. Although the jury found the Burns defendants to have breached the

contract by violating the no-marketing provision of the contract because of their discussions with other individuals regarding the property during the lifetime of the Agreement, this conduct does not appear to constitute a "fail[ure] to perform a contractual obligation," such as "nonpayment without consent." Because the Burns defendants' discussions with third parties regarding the land during the duration of the contract do not fall within the ordinary meaning of default, the "full termination" remedy provided for in section 15 of the contract was not triggered here. The district court did not abuse its discretion in failing to grant a new trial on this issue. Thus, we affirm the judgment of the district court on this ground.[1]

Kentucky Rose also argues that the district court's instructions to the jury on damages were erroneous. This court reviews jury instructions as a whole, and the propriety of jury instructions is a question of law to be reviewed *de novo*. *Williams v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 365 (6th Cir. 2005). This court reviews the instructions in their entirety in order to determine whether the jury was instructed as to the relevant considerations and was provided with a basis in law to aid in the decision. *O-So Detroit, Inc. v. Home Ins. Co.*, 973 F.2d 498, 502 (6th Cir. 1992). However, a district court's refusal to give a particular jury instruction is reviewed by this court for an abuse of discretion. *Fisher v. Ford Motor Co.*, 224 F.3d 570, 576 (6th Cir. 2000).

Kentucky Rose contends that the district court erred in failing to instruct the jury that, should it find that the Burns defendants breached the no-marketing provision of the contract, then Kentucky

---

[1]Even if the Burns defendants' breach did constitute default as Kentucky Rose contends, Kentucky Rose is still not entitled to the return of its deposit payments, the main and most obvious measure of damages, as the contract explicitly states that the deposit payments were non-refundable unless the property is condemned.

Rose would automatically be entitled to damages equal to "full termination" under section 15 of the contract. Kentucky Rose objected to the jury instructions on damages given by the district court prior to the conclusion of trial, but the court decided to retain the instructions as they were and informed Kentucky Rose that it could raise the issue post-judgment if necessary. Kentucky Rose renewed its objection after the jury verdict was entered, but the district court denied the motion.

The district court's instruction to the jury regarding damages informed the jury that if it found for Kentucky Rose on any of its claims, it would then need to determine what damages, if any, were appropriate. The court directed the jury's attention specifically to the due diligence payments, expenses incurred in developing the property, and lost profits as potential measures of damages. The district court further instructed the jury that the fact that it was being instructed on damages did not mean that Kentucky Rose was entitled to damages, but rather that the award had to have "a reasonable basis in the evidence." This instruction regarding damages was sufficient, as it "adequately inform[ed] the jury of the relevant considerations and provide[d] a basis in law for aiding the jury" with respect to the damages issue. *O-So Detroit*, 973 F.2d at 502. As discussed *supra*, Kentucky Rose was not entitled to damages under the provisions of the contract; thus, no further instruction was required, and the district court did not abuse its discretion in failing to provide an instruction that specifically referenced section 15 of the contract. We therefore affirm the decision of the district court with respect to this issue.

**B.**

Kentucky Rose argues next on appeal that the district court erred in refusing to grant a new trial based on what Kentucky Rose asserts were inconsistent findings by the jury. Kentucky Rose

argues that once the jury found that the Burns defendants had breached the no-marketing provision of the contract, it necessarily should have found that the Burns defendants had violated the implied covenant of good faith and fair dealing. Because the jury found for Kentucky Rose on the breach of contract claim, but not on the implied covenant claim, as evidenced by its answers on the special interrogatory forms, Kentucky Rose argues that a new trial was warranted.

The district court found that it was reasonable for the jury to conclude that the Burns defendants had "breached the *letter* of the Purchase Agreement, while at the same time concluding that they did not do for the subjective *purpose* of denying to Kentucky Rose the benefits of the contract," and thus, no inconsistency warranting a new trial existed. The district court further found that any inconsistency in the jury verdict would not warrant a new trial because the practical result–the amount of damages–would not likely have been different, as the proof of damages on the two claims was "virtually identical."

When a jury verdict is challenged as inconsistent, "we look for a reasonable way to read the answers to interrogatories as expressing a coherent and reasonable view of the case." *Morales*, 151 F.3d at 509 (internal citations and quotation marks omitted). Kentucky law governs whether the verdict is inconsistent, while federal law supplies the remedy in the event that such an inconsistency is found. *Id*. We make the inconsistency determination by examining "the jury charge and the total context of the special verdict." *Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1148 (6th Cir. 1996).

A breach of contract occurs when one party materially fails to perform in accordance with a provision of the contract without justification or excuse. 17B C.J.S. Contracts § 561. In addition to the provisions of the contract, every contract contains an implied covenant of good faith and fair

dealing which imposes upon the parties a duty to act in a bona fide manner. *Pearman v. W. Point Nat'l Bank*, 887 S.W. 2d 366, 368 (Ky. Ct. App. 1994). In order to show a violation of the implied covenant of good faith and fair dealing, a showing of breach of contract is ordinarily not required; rather, the party asserting the violation must "provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." 23 Williston on Contracts § 63:22 (4th ed. 2004).

In this case, the district court instructed the jury with respect to the breach of contract claim as follows:

> Under the terms of the Purchase Agreement, the Defendants were prohibited from marketing their property for sale while it was under option to the Plaintiff. You will find in favor of the Plaintiff if you are satisfied from the evidence that the Defendants breached the Purchase Agreement by marketing their property for sale while it was under option to the Plaintiff.

The judge instructed the jury with regard to the violation of the implied covenant of good faith and fair dealing claim in the following manner:

> In every contract, there is an implied covenant of good faith and fair dealing upon each party to the contract that neither party will engage in conduct for the purpose of denying to the other the benefits of the contract. If any party to the contract violates that implied covenant, that party is in breach of the contract and is liable for damages.

The jury returned verdict forms finding that the defendants had breached the Purchase Agreement by marketing the property for sale while it was under option to the plaintiff, but that the defendants had not violated the implied covenant of good faith and fair dealing.

Upon review of the verdicts, it cannot be said that the district court abused its discretion in refusing to grant a new trial on this ground. Evidence was presented at trial indicating that the Burns

defendants were unaware of the no-marketing provision in the contract, even though they acknowledged that they had read and signed the Purchase Agreement. It is entirely plausible that the jury found that, while the Burns defendants' conduct did in fact violate the provision contained in the Purchase Agreement, the Burns defendants nonetheless did not intend to deprive Kentucky Rose of the benefit of the agreement. Because the verdicts can be read in a manner which "express[es] a coherent and reasonable view of the case," *Morales*, 151 F.3d at 509 (internal citations and quotation marks omitted), the district court did not abuse its discretion in refusing to grant a new trial on this issue.

**III.**

For the foregoing reasons, we affirm the holding of the district court.